**PUBLIC SERVICE COMPANY OF COLORADO, a Colorado corporation, Appellant and Cross-Appellee,**

v.

**BLUE RIVER IRRIGATION COMPANY, Appellee and Cross-Appellant,**

City and County of Denver, Acting By and Through its Board of Water Commissioners; Town of Breckenridge; and Orlyn Bell, Division Engineer, Water Division No. 5, Appellees.

No. 86SA10.

Supreme Court of Colorado, En Banc.

April 4, 1988.

Timothy J. Flanagan, Kelly, Stansfield & O'Donnell, Denver, for Public Service Co. of Colorado.

Glenn E. Porzak, Alan D. Greenberg, Holme Roberts & Owen, Boulder, for Blue River Irr. Co.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wendy C. Weiss, First Asst. Atty. Gen., Natural Resources, Denver, for Div. Engineer, Water Div. No. 5.

MULLARKEY, Justice.

Public Service Company of Colorado (Public Service) appeals from the water court's summary judgment granting Blue River Irrigation Company's (Blue River's) application for a quadrennial finding of reasonable diligence. Blue River cross-appeals from the water court's ruling allowing Public Service to participate in the hearing on Blue River's application. We conclude that Public Service was a proper party and that the water court improperly limited Public Service's cross-examination of the witnesses. Accordingly, we reverse the judgment and remand the matter for further proceedings.

I.

On December 23, 1983, Blue River filed an application for change of water right with respect to its conditional water right priority number 160(c).[1] *See* § 37–92–302(1)(a), 15 C.R.S. (1984 Supp.).[2] Public Service, the City and County of Denver (Denver), and several other parties filed statements of opposition. *See*

§ 37–92–302(1)(b), 15 C.R.S. (1984 Supp.). We will refer to this action, Water Division 5 No. 83CW330, as the change case.

On May 30, 1984, Blue River filed an application for a quadrennial finding of reasonable diligence with respect to the same conditional water right. *See* §§ 37–92–301(4), 37–92–302(1)(a), 15 C.R.S. (1973 & 1984 Supp.). Statements of opposition were filed by the Town of Breckenridge and Denver. *See* § 37–92–302(1)(b), 15 C.R.S. (1984 Supp.). Public Service filed an entry of appearance, but not a statement of opposition. *See* Local Rules for Water Division 5, Rule 1(c);[3] *see also* § 37–92–304(3), 15 C.R.S. (1973) (reference to entries of appearance deleted effective July 1, 1983, by Ch. 412, sec. 3, § 37–92–304, 1983 Colo. Sess. Laws 1425, 1428–29). We will refer to this action, Water Division 5 No. 84CW143, as the diligence case.

On July 25, 1985, the water judge entered a pretrial order which consolidated the two cases for trial on October 15 and 16, 1985. However, on the day set for trial, Blue River and Denver filed a stipulation in which Blue River requested leave to withdraw its application in the change case and Denver consented to entry of a finding of reasonable diligence in the diligence case. The water judge granted Blue River's motion to dismiss the change case and stated that the consolidation of the two cases was "vacated and rendered void, and any rights of the parties by virtue of the consolidation [were] modified and limited accordingly."

---

1. This conditional water right is for eighty-five cubic feet per second for irrigation purposes out of the Blue River. It has two points of diversion:

Headgate No. 1 is located at a point on the right bank of the Blue River at the high water line of the Green Mountain Reservoir, whence the Northwest Corner of Section 12, Township 2 South, Range 80 West, 6th P.M. bears North 7°57' West, 2218.5 feet;

Headgate No. 2 is located at a point on the right bank of the Blue River at a pump supply point, whence the Northwest Corner of Section 12, Township 2 South, Range 80 West, 6th P.M. bears North 7°22' East, 5451.4 feet. Blue River claims an appropriation date of July 5, 1904, and states that the original decree of its

conditional water right was entered on March 2, 1910. Blue River obtained findings of reasonable diligence in 1972, 1974, 1977, and 1981.

2. We cite to the statutes which were in effect when Blue River filed its applications. No relevant changes have been made since.

3. Rule 1(c), which was repealed October 16, 1985, provided as follows: "Any person may enter an appearance and shall be given notice of hearings; however, a person shall not become a party and shall not be entitled to participate in any proceeding or hearing unless the person also files an application, statement of opposition, or pleading." This rule was in effect when Public Service filed its entry of appearance.

The Town of Breckenridge had withdrawn its opposition in the diligence case prior to the entry of the pretrial order.[4] Therefore, after Denver consented to entry of judgment in the diligence case, no one except Public Service actively opposed Blue River's application. Blue River moved for summary judgment, arguing that it had demonstrated reasonable diligence and that Public Service did not have party status in the diligence case because it had filed only an entry of appearance. The water court judge ruled that Blue River should have raised its challenge to Public Service's status in the diligence case earlier, and therefore allowed Public Service to participate in the hearing.

At the summary judgment hearing the project engineer who had supervised the work on Blue River's project testified that Blue River had acquired the necessary federal permits for the project in 1981 and 1982. Also during 1982, his consulting firm had produced several reports for Blue River which described the results of the firm's geotechnical investigation, the water requirements for the proposed irrigation, and the estimated cost of the project. He testified that the estimate of costs which his firm had provided was "really a construction budget to go into immediate construction." However, he conceded that the budget had been put together in 1982 and that Blue River still had not acted on it. Finally, he estimated that Blue River had spent over $150,000 during the four year diligence period in question.

Public Service cross-examined Blue River's witnesses but did not call any of its own witnesses. During the hearing, Public Service asked Robert F. Moreland, general counsel and project manager for Blue River, "Who owns the stock in the Blue River Company?" Blue River objected to the question, contending that the identity of shareholders is confidential under Colorado corporate law. The water court sustained the objection. Public Service also tried to question Blue River's witnesses about the economic feasibility of Blue River's plan for developing the water. Blue River objected to the questions, contending that they were irrelevant to the diligence proceeding. The water judge sustained the objection. After the hearing, the water court granted Blue River's motion for summary judgment and entered a finding of reasonable diligence.

## II.

A conditional water right is "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), 15 C.R.S. (1973). Such a right is "established upon the concurrence of an *intent to appropriate* water and the *performance of overt acts* in furtherance of that intent." *City & County of Denver v. Colorado River Water Conservation Dist.*, 696 P.2d 730, 745 (Colo.1985) (emphasis in original) (citing *City of Aspen v. Colorado River Water Conservation Dist.*, 696 P.2d 758, 761 (Colo.1985)). The purpose of a conditional water right is to encourage development of water resources by allowing the applicant to complete financing, engineering, and construction with the certainty that if its development plan succeeds, it will be able to obtain an absolute water right. *See Metropolitan Suburban Water Users Ass'n v. Colorado River Water Conservation Dist.*, 148 Colo. 173, 194, 365 P.2d 273, 284–85 (1961).

In order to assure that water rights are developed expeditiously, every fourth year a holder of a conditional water right must "obtain a finding by the [water court] referee of reasonable diligence in the development of the proposed appropriation." § 37–92–301(4), 15 C.R.S. (1973); *see also* § 37–92–302(1)(a), 15 C.R.S. (1984 Supp.) (requiring one seeking "quadrennial finding of reasonable diligence" to file "verified application setting forth facts supporting the ruling sought"). Anyone who

---

**4.** Although the record includes no document showing the withdrawal, the Town of Breckenridge was not listed as an objector in the pretrial order, and the summary judgment order stated that the Town of Breckenridge had withdrawn its objection. No party challenges this on appeal and we accept it as true.

wishes to oppose an application for a finding of reasonable diligence may do so by filing with the water clerk a timely, verified statement of opposition which states the factual support for his opposition to the application. *See* § 37–92–302(1)(b), (c), 15 C.R.S. (1973 & 1984 Supp.). If a statement of opposition is filed, the referee has discretion either to rerefer the matter to the water judge or to make a ruling. § 37–92–303(2), 15 C.R.S. (1984 Supp.).

Prior to July 1, 1983, if the referee rereferred the matter to the water court judge, all people who "enter[ed] their appearance in writing prior to the date on which hearings [were] to commence" could participate in the hearing. § 37–92–304(3), 15 C.R.S. (1973). In 1983, the General Assembly amended section 37–92–304(3) to state in pertinent part:

> Any person may move to intervene in proceedings before the water court upon payment of a fee, equal to that for filing an answer to a civil action in district court, ... and upon a showing of mistake, inadvertence, surprise, or excusable neglect.... The water court shall grant the motion to intervene only if intervention is sought within thirty days before any pretrial conference or due date for trial data certificates and intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

Ch. 412, sec. 3, § 37–92–304(3), 1983 Colo. Sess. Laws 1425, 1428–29. The current statute contains no provision authorizing entries of appearance.

### III.

The appeal and cross-appeal in this case raise three issues. First, Blue River argues that Public Service does not have standing to appeal because it was not a proper party in the proceedings below. Second, Public Service argues that the water court erred by ruling that the identity of the shareholders in Blue River, which is a Colorado nonprofit mutual ditch company, was not relevant to the reasonable diligence proceedings. Third, Public Service contends that the water court erred by ruling that the economic feasibility of Blue River's plan to develop its water right was irrelevant to the reasonable diligence proceedings. We turn first to the question of Public Service's standing to take this appeal.

### IV.

On the day set for trial, Blue River argued that because all references to entries of appearance had been deleted from section 37–92–304(3) prior to Public Service's entry of appearance in the diligence case, Public Service was not a proper party and was not entitled to participate in the hearing. The water court judge, who was familiar with the course of the pretrial proceedings, ruled that this objection "should have been tested by a motion to dismiss. And, coming at this late date, it will not be heard by the Court on the eve of a trial setting." Accordingly, the trial court allowed Public Service to participate as a party in the summary judgment hearing. Public Service subsequently filed post-hearing motions and took an appeal in this case.

Based on the change in the law eliminating the entry of appearance procedure, Blue River could have asserted that Public Service had not taken the proper steps to become a party in the diligence case. *Cf. Bar 70 Enterprises, Inc. v. Tosco Corp.*, 703 P.2d 1297, 1304 n. 5 (Colo. 1985) (1983 amendment "clearly change[d] the law on a person's right to appear in proceedings before the water judge"). Under the current statute, because the time for filing a statement of opposition pursuant to section 37–92–302(1) had expired, Public Service should have filed a motion to intervene. *See* § 37–92–304(3), 15 C.R.S. (1984 Supp.). Public Service's failure to follow the statutory procedure, however, is not a matter analogous to subject matter jurisdiction which can be raised at any time. We view its filing of an entry of appearance as analogous to the filing of a defective motion to intervene. When a technically defective motion to intervene is filed, the existing parties may waive their right to object to the intervention by failing to make timely objections. *See Hercules*

*Equip. Co. v. Smith,* 138 Colo. 458, 462, 335 P.2d 255, 257 (1959). *See generally* 7C C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 1914 (2d ed. 1986) ("existing party that does not object to the application to intervene may waive its right to object later"). Therefore, the question is whether the water court was correct to rule that Blue River had waived its right to object.

We conclude that under the facts of this case, the water judge did not abuse his discretion by finding a waiver and allowing Public Service to participate in the hearing. The pretrial order consolidated the two cases and referred to Public Service as an "objector" without qualifying or limiting its objector status to one case. The record strongly suggests that Blue River was aware that Public Service intended to participate in both cases and it contains no evidence suggesting that Blue River challenged Public Service's status as a party in the diligence case at the pretrial conference or at any other time prior to trial. Indeed, none of the four disputed issues listed in the pretrial order was related to Public Service's status in the diligence case. C.R. C.P. 16(c) provides that the pretrial order "shall control the subsequent course of action unless modified at the trial to prevent manifest injustice." Given Blue River's failure to object at the pretrial conference [5] and the lack of surprise or prejudice to Blue River, the water court's ruling was not an abuse of discretion. Because Public Service was a proper party in the diligence proceedings below, it has standing to appeal.

## V.

■ We now turn to Public Service's argument that the identity of shareholders in a mutual ditch company should be admissible in a water court proceeding in light of the unique nature of a mutual ditch company. In *Jacobucci v. District Court,* 189 Colo. 380, 541 P.2d 667 (1975), we addressed the nature of a mutual ditch company in detail. We explained that mutual ditch companies "are not organized under the general Colorado corporation statutes, but under special legislation for ditch and reservoir companies." 189 Colo. at 386, 541 P.2d at 671. That legislation is currently codified at section 7–42–101 to 7–42–118, 3A C.R.S. (1986). The stock of a mutual ditch company which is issued to a shareholder "represent[s] a definite and specific water right." *Id.,* 189 Colo. at 387–88, 541 P.2d at 672. The company is organized solely for the shareholders' benefit, and charges them an annual assessment based on costs. It does not make a profit. In *Jacobucci,* we concluded that "the unique character of these corporations mandates different treatment which is not fully in accord with the principles applicable to corporations in general." 189 Colo. at 388, 541 P.2d at 672. While *Jacobucci* dealt with the question of whether the shareholders in a mutual ditch company were indispensable parties in a condemnation action, the general discussion of the nature of mutual ditch companies is equally applicable to the question now before us.

■ In a diligence proceeding, the applicant must prove that it has the intent to use the water and has performed concrete actions demonstrating diligent efforts to finalize its appropriation. *E.g., Colorado River Water Conservation Dist. v. City & County of Denver,* 640 P.2d 1139, 1142 (Colo.1982) (quoting *Orchard Mesa Irrigation Dist. v. City & County of Denver,* 182 Colo. 59, 65, 511 P.2d 25, 28 (1973), which stated that a "record which shows only a hope someday to use the water, but with admitted prior years of inaction, will not support the claim"). Because the shareholders of a mutual ditch company, rather

---

5. Blue River argues that it could not have objected to Public Service's participation at the pretrial conference because the two cases were consolidated at that time. However, this argument is without merit. The consolidation of the change case and the diligence case did not merge the two cases into a single action and thereby confer party status on Public Service for purposes of the diligence case. *National Farmers Union Property & Casualty Co. v. Frackelton,* 662 P.2d 1056, 1061–63 (Colo.1983) (trial court erred in treating plaintiff in one of two consolidated suits as automatically being a party in the other suit simply by virtue of the consolidation).

than the company as an entity, will make any actual beneficial application of the water, *Jacobucci*, 189 Colo. at 389–90, 541 P.2d at 674, Public Service is correct that the identity of the shareholders is relevant to the diligence proceeding. This is true even though title to the conditional water right is in the name of Blue River. *Cf. Jacobucci*, 189 Colo. at 388, 541 P.2d at 673 (while "naked title" to water rights may be in name of mutual ditch company, "water rights are actually owned by the farmers who are served thereby"). The individuals who purportedly intend to use the water should be available for questioning as to their intent to use the water for beneficial purposes. Because the identity and intent of the shareholders are relevant, and the general principles of corporate law do not apply to mutual ditch companies, the shareholders' identity is not privileged and is discoverable and admissible in a diligence proceeding.[6] *See generally* C.R.C.P. 26(b)(1) (describing broad scope of discovery); CRE 401 (defining relevant evidence). Accordingly, on remand, the water court shall allow Public Service to pursue its line of questioning about the identity of the shareholders in Blue River absent a showing that the probative value of that information is substantially outweighed by the danger of confusion or any of the other factors listed in CRE 403.

## VI.

■ Finally, Public Service asserts that the economic feasibility of a project is relevant in a diligence proceeding. We agree.

We have said repeatedly that in order "to prove reasonable diligence in the development of a conditional water right the applicant must show an intention to use the water coupled with concrete action amounting to diligent efforts to finalize the intended appropriation." *Vail Valley Consol. Water Dist. v. City of Aurora*, 731 P.2d 665, 668 (Colo.1987) (citations omitted).

The purpose of a diligence proceeding is "to prevent the accumulation of undeveloped and unproductive conditional water rights to the detriment of those seeking to apply the state's water beneficially." *Trans–County Water, Inc. v. Central Colo. Water Conservancy Dist.*, 727 P.2d 60, 65 (Colo.1986). The diligence proceeding provides a safety net by "enabl[ing] the court to check on whether evidence of insufficient finances or the economic non-feasibility of the project appear[s] in more concrete form.... [T]here will have to be presented progress reports of financial plans and sufficient work to prove that the project can and will be completed." *Four Counties Water Users Ass'n v. Colorado River Water Conservation Dist.*, 159 Colo. 499, 516, 414 P.2d 469, 478 (1966); *see also Colorado River Water Conservation Dist. v. City & County of Denver*, 640 P.2d at 1142 (court must look at all factors, including availability of materials, labor, and equipment, and claimant's economic ability, in determining whether holder of conditional water right is "developing it for a beneficial use in the most expedient and efficient fashion possible under the circumstances").

In determining whether a holder of a conditional water right is hoarding that right rather than putting it to some beneficial use, the water court must consider "all factors present in a particular case." *Colorado River Water Conservation Dist. v. Twin Lakes Reservoir & Canal Co.*, 171 Colo. 561, 567, 468 P.2d 853, 856 (1970). The economic feasibility of the proposed development certainly is one relevant factor, especially where, as here, the applicant has had many years in which to investigate various prospects for financing, design, and construction. *See Twin Lakes*, 171 Colo. at 567, 468 P.2d at 856 (claimant's economic ability is one factor to consider in diligence proceeding); *Metropolitan Suburban Water*, 148 Colo. at 194, 365 P.2d at 284 ("[t]ime and work will demonstrate

---

6. Blue River argues that the identity of shareholders generally is not discoverable under Colorado law. That broad issue is not before us and, therefore, our holding is limited to the facts of this case, *i.e.*, the identity of the shareholders in a nonprofit mutual ditch company is discoverable in and relevant to a diligence proceeding. We express no opinion as to the correctness of Blue River's assertion that the identity of shareholders in other types of companies is protected from discovery.

whether the engineering and construction plans are feasible and can be successfully completed ... [and] whether finances can be made available"). On remand, the water court should allow Public Service to question witnesses and to introduce evidence about the economic feasibility of Blue River's proposed irrigation project.

## VII.

For the reasons stated above, we conclude that Public Service was a proper party in the diligence proceeding and has standing to prosecute this appeal. Because the water court improperly excluded evidence of the identity of Blue River's shareholders and the economic feasibility of Blue River's proposed irrigation project, we reverse the judgment and remand the matter for further proceedings consistent with this opinion.