PUBLIC SERVICE COMPANY OF COLORADO, a Colorado corporation, Objector–Appellant,

v.

BLUE RIVER IRRIGATION COMPANY, Applicant–Appellee,

and

City and County of Denver, acting by and through its Board of Water Commissioners, and Orlyn Bell, Division Engineer, Water Division No. 5, Objectors–Appellees.

No. 91SA37.

Supreme Court of Colorado,
En Banc.

April 6, 1992.

As Modified on Denial of Rehearing
April 27, 1992.

Timothy J. Flanagan, Chad M. Neuens, Kelly, Stansfield & O'Donnell (James R. McCotter, Sr. Vice President and General Counsel, Public Service Co., of counsel), Denver, for objector-appellant.

Glenn E. Porzak, James R. Ghiselli, Holme, Roberts & Owen, Boulder, for applicant-appellee.

Michael L. Walker, Casey S. Funk, Denver, for objector-appellee City and County of Denver.

Wendy C. Weiss, First Asst. Atty. Gen., Natural Resources Section, Denver, for objector-appellee Orlyn Bell, Div. Engineer, Water Div. No. 5.

Justice MULLARKEY delivered the Opinion of the Court.

Public Service Company of Colorado ("Public Service") appeals a judgment and decree of the water court which found that the Blue River Irrigation Company ("Blue River") had exercised reasonable diligence for the period from May 1980 to May 1984 in the development of Blue River's conditional water right. This is the third time this case is before this court. In two prior opinions, we concluded that Public Service was a proper party and ordered the water court to permit Public Service to conduct discovery and to present evidence at trial regarding the identity and intent of Blue River's shareholders and the economic feasibility of the project. *See Public Service Company of Colorado v. Blue River Irrigation Company*, 753 P.2d 737 (Colo.1988) ("*Blue River I*"), and *Public Service Company v. Blue River Irrigation Company*, 782 P.2d 792 (Colo.1989) ("*Blue River II*"). In this appeal, we affirm the water court's finding of reasonable diligence.

## I.

■ Before considering Public Service's arguments on appeal, we will briefly summarize the applicable standards for judicial review. In a reasonable diligence proceeding, the applicant must show its intention to put the water to beneficial use, together with concrete acts which it has taken to finalize the appropriation. *Blue River I*, 753 P.2d at 742. The determination of whether reasonable diligence has been demonstrated is fact-based requiring the water court to consider all the relevant evidence. It should consider, for example, "the size and complexity of the project, the extent of the construction season, the availability of material, labor, and equipment, the economic ability of the claimant, and the intervention of outside delaying factors." *Trans–County Water, Inc. v. Central Colorado Water Conservancy District*, 727 P.2d 60, 64 (Colo.1986). The economic feasibility of the project also is a relevant factor. *Blue River I*, 753 P.2d at 742. Given the factual nature of the water court's determination, we have said that its findings of reasonable diligence "are binding on appeal if there is competent evidence to support them." *Trans–County*, 727 P.2d at 65. *See also Municipal Subdistrict, Northern Colorado Water Conservancy District v. Rifle Ski Corporation*, 726 P.2d 635, 637 (Colo.1986) (same); *Orchard Mesa Irrigation District v. City and County of Denver*, 182 Colo. 59, 63, 511 P.2d 25, 27 (1973) (same).

Public Service Company makes two basic arguments in this appeal. First, it contends that Blue River failed to comply with this court's prior opinions because Public Service was permitted only limited discovery regarding the identity of Blue River's shareholders. Therefore, contends Public Service, Blue River's application should be dismissed as a matter of law. Public Service's second argument is that Blue River did not demonstrate due diligence because it lacked an appropriative intent and instead had an improper speculative intent. As evidence of its contention, Public Service points to Blue River's sale negotiations with the City and County of Denver. It also alleges that there are inadequate irrigable lands for the project, that Blue River lacks financial ability to fund the project, and that its on-site activities have been minimal. We will consider these arguments in turn.

## II.

■ In our prior opinions, we directed the water court to permit Public Service to

conduct discovery and to present evidence at trial regarding the identity and intent of Blue River's shareholders and the economic feasibility of the project. We found that the information regarding Blue River's shareholders was relevant because Blue River is a mutual ditch company and its shareholders are the ones which will actually exercise the water rights held by Blue River. *Blue River I,* 753 P.2d at 741–742. Blue River argues that we should reject Public Service's contention regarding compliance with the remand orders in our prior opinions because Public Service had full opportunity to engage in discovery and to present evidence regarding Blue River's shareholders.

The shares of Blue River are owned by two corporations, Water Resources Co. (89%) and Red Creek Water Company (11%). Water Resources Co., in turn, is wholly owned by Water Resources Corp., a Delaware corporation. Water Resources Corp. itself is wholly owned by a trust.

In support of its contention that discovery was improperly restricted, Public Service focuses on the trust. Although the names of the trustee and the beneficiary were disclosed by Blue River, Public Service contends that it was unable to ascertain the intent and identity of the Blue River shareholders without access to the trust document. Assuming without deciding that the trust document was relevant, Public Service made no attempt to discover it. Under these circumstances, the issue is not properly preserved for review and we decline to address it. *See Dove v. Delgado,* 808 P.2d 1270, 1273 n. 3 (Colo.1991) ("Generally, issues not presented in the trial court are deemed waived and cannot be raised on appeal.").

### III.

■ Public Service's principal argument on appeal is that Blue River lacks the intent to put the water to beneficial use for irrigation. It claims that Blue River is attempting to preserve a "paper" water right for speculative purposes. The water right at issue here was adjudicated by the Summit County District Court on March 2, 1910 for 85 cfs for irrigation uses and has an appropriation date of July 5, 1904. In four separate diligence cases covering time periods prior to 1980, the water court found that reasonable diligence had been exercised in the development of this water right.

The water court made the following factual findings in support of its conclusion that Blue River exercised reasonable diligence in this case:

6. Applicant owns or otherwise controls lands in the Blue River basin which it intends to irrigate with the subject water right. The diversion points for the subject water right are located at the shoreline of Green Mountain Reservoir. In order to transport water from Green Mountain Reservoir to the applicant's property, the applicant was required to obtain a federal permit and right-of-way to cross intervening Forest Service and Bureau of Land Management lands.

7. During the present diligence period (May 1980 through May 1984), the applicant has undertaken the following activities in an effort to apply the subject water right to a beneficial use:

(a) Between May 1980 and February 1982, applicant and its agents participated in over 40 meetings with Forest Service and BLM officials in 'order to secure the necessary governmental permit and right-of-way to construct the facilities required to apply the subject water right to a beneficial use.

(b) On or about October 6, 1981, applicant obtained a special use permit from the U.S. Forest Service which grants the right to construct, operate and maintain on and across intervening Forest Service lands the various facilities required to transport applicant's irrigation water to its lands.

(c) On or about February 2, 1982, applicant obtained a right-of-way from the BLM which grants the right to construct, operate and maintain on and across intervening BLM property the various facilities required to transport applicant's irrigation water to its lands.

(d) Public Service stipulated to the fact that both the Forest Service permit and BLM right-of-way were required before the subject water right could be applied to a beneficial use.

(e) The foregoing permit and right-of-way designated the corridor through which the applicant's transport pipelines and ditches could be routed. Thus, until the permit and right-of-way were issued, the applicant did not know where it would be allowed to construct its transport facilities across the intervening federal lands.

(f) Subsequent to the issuance of the Forest Service permit and BLM right-of-way, applicant set about the process of completing detailed design and engineering work. Specifically, applicant had the pump station site on the shoreline of Green Mountain Reservoir and the entire route of the transport facilities surveyed in the field. Applicant also had a geotechnical investigation completed regarding the requisite pumping facilities, which included the drilling of core samples at the site of the shoreline pumphouse, and the layout of all electrical facilities. In addition, applicant had its engineers analyze the optimum reservoir intake elevations for the diversion pumps, and prepare the mechanical design of the pumphouse and pump intakes.

(g) Applicant has spent in excess of $150,000 during the diligence period for administrative, engineering, legal and/or other fees and expenses, all of which expense has been necessary to apply the subject water right to the beneficial use for which it was decreed.

Public Service does not attack the water court's findings regarding Blue River's efforts to seek and obtain necessary permits from the responsible federal officials in the United States Forest Service and the Bureau of Land Management as discussed in paragraphs 7(a)–(e) above. It is apparent from the record that such permits were essential to the development of Blue River's water rights because federal lands lie between the point of diversion and the land to be irrigated. Hence, the water court properly considered Blue River's permit efforts as evidence of reasonable diligence.

Public Service does challenge paragraph 6 of the water court's order finding that the applicant owns or controls lands which it intends to irrigate with the water right at issue. Public Service argues that the boundaries of the project changed continually and included property which was not owned or controlled by Blue River. It also contended that the amount of water claimed, 85 cfs, was too great for irrigation of the lands under Blue River's ownership or control. Public Service disputed Blue River's claim that much of the land was irrigable. Blue River presented evidence that it owned or controlled 4,000 acres, including 2,000 or 2,100 acres to be irrigated by the project, that the land was irrigable, and that the design and construction of the facilities were for use of the entire 85 cfs. The trial court's factual findings, while based on disputed evidence, are supported by evidence and we will not disturb them on appeal.

Public Service also contests the findings in paragraphs 7(f) and (g) as part of its larger argument that Blue River lacked the financial ability to construct this water project. During the diligence period, Water Resources Co., Blue River's majority shareholder, made substantial expenditures for the development of this water right, including the $150,000 which the water court found in paragraph 7(g) was spent on design and construction. According to Blue River's evidence, Water Resources Co. expended a total of approximately $1.9 million on the project (not limited to the time of this diligence period) and its board of directors authorized additional expenditures for land purchases.

Public Service asks us to disregard this evidence because the expenditures were not made by the mutual ditch company, Blue River, but rather were made by Water Resources Co. We decline to do so. The premise of our decisions in *Blue Water I* and *Blue Water II*, based on *Jacobucci v. District Court*, 189 Colo. 380, 541 P.2d 667 (1975), was that a mutual ditch company exists solely for the benefit of its share-

holders and thus, the acts of its shareholders are relevant to a determination of reasonable diligence. *Blue River I,* 753 P.2d at 741–742. It was for that reason that we directed the water court to permit Public Service to discover and to present information about Blue River's shareholders. The shareholders in this case are two corporations and the acts of the majority shareholder certainly are the acts of Blue River for purposes of the reasonable diligence hearing. Contrary to Public Service's suggestion, we see no reason to disregard the acts of Water Resources Co. because it is not a natural person.

██ Finally, Public Service claims that Blue River lacked the intent to put the water to beneficial use because it held the rights for speculation. The record reflects that the city and county of Denver originally objected to Blue River's claim. During the diligence period, Blue River and Denver negotiated for the sale of Blue River's conditional water right and, after the diligence period, Denver bought Blue River's right. Public Service argues that Blue River's efforts to sell and ultimate sale of its conditional water rights negate any intent to develop the water right. Blue River responds that the sale actually is evidence of its intent to complete the project because Denver would not have bought the water right if it had not been convinced that Blue River would use it.

In the context of abandonment, we held that a water right holder's good faith efforts to sell its water rights were evidence of the holder's intent not to abandon those rights. *People ex rel. Danielson v. City of Thornton,* 775 P.2d 11, 21 (Colo.1989). "[T]he critical issue in an abandonment case is whether the owner intended to discontinue permanently the use of the water available under the right in question." *Id.* In a diligence case, of course, the critical issue is different. The question is whether the appropriator intends to put the water to a beneficial use and has taken concrete steps to finalize the appropriation. *Blue River I,* 753 P.2d at 742. Negotiation or sale of the conditional water is not evidence of reasonable diligence because neither indicates an intent to put the water to beneficial use or is a step in finalizing the appropriation.

The sale or attempted sale of a conditional water right, like lack of economic feasibility, may be evidence of an intent to hoard rather than to develop the water right. *See Colorado River Water Conservancy District v. Twin Lakes Reservoir & Canal Co.,* 171 Colo. 561, 468 P.2d 853 (1970). The water court in this case properly considered the totality of the circumstances including Public Service's claim of hoarding in reaching the conclusion that Blue River exercised reasonable diligence in developing its water right from May 1980 to May 1984. The negotiation and eventual sale of Blue River's conditional water right do not override the substantial evidence of reasonable diligence found by the water court.

Judgment affirmed.