MUNICIPAL SUBDISTRICT, NORTHERN COLORADO WATER CONSERVANCY DISTRICT, Appellant/Cross–Appellee,

v.

GETTY OIL EXPLORATION COMPANY, Appellee/Cross–Appellant,

and

Orlyn G. Bell, Division Engineer, Water Division 5, Appellee Pursuant to C.A.R. 1(e).

No. 99SA75.

Supreme Court of Colorado, En Banc.

April 10, 2000.

558

Trout & Raley, P.C., Bennett W. Raley, Bart L. Rickenbaugh, Denver, Colorado, Attorneys for Appellant/Cross–Appellee.

Williams, Turner & Holmes, P.C., Anthony W. Williams, J.D. Snodgrass, Mark A. Hermundstad, Grand Junction, Colorado, Attorneys for Appellee/Cross–Appellant.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Felicity Hannay, Deputy Attorney General, Wendy C. Weiss, First Assistant Attorney General, Carl D. Angel, Senior Assistant Attorney General, Natural Resources Section Denver, Colorado, Attorneys for Orlyn G. Bell, Division Engineer, Water Division 5.

Moses, Wittemyer, Harrison and Woodruff, P.C., James R. Montgomery, Kevin J. Kinnear, Boulder, Colorado, Attorneys for Amicus Curiae Union Oil Company of California.

Balcomb & Green, P.C., Scott Balcomb, David Sandoval, Glenwood Springs, Colorado, Attorneys for Amicus Curiae Mobil Oil Corporation.

Porzak, Browning and Johnson, LLP, Glenn E. Porzak, Steven Bushong, Boulder, Colorado, Attorneys for Amicus Curiae Exxon Corporation.

Friedlob, Sanderson, Raskin, Paulson & Tourtillott, LLC, Brian M. Nazarenus, Denver, Colorado, Attorneys for Amicus Curiae Public Service Company of Colorado and Climax Molybdenum Company.

Dufford & Brown, P.C., Jack F. Ross, Joanne Herlihy, Denver, Colorado, Attorneys for Amicus Curiae Chevron Shale Oil Company.

Carlson, Hammond & Paddock, William A. Paddock, Peter C. Fleming, Denver, Colorado, Attorneys for Amicus Curiae OXY USA, Inc.

David C. Hallford, Jill C. Harris, Leavenworth & Tester, P.C., Loyal E. Leavenworth, Glenwood Springs, Colorado, Attorneys for Amicus Curiae the Colorado River Water Conservation District.

Justice RICE delivered the Opinion of the Court.

The Municipal Subdistrict, Northern Colorado Water Conservancy District (Subdistrict), appeals a finding of reasonable diligence in the development of conditional water rights entered by the District Court, Water Division No. 5 (water court).[1] Getty Oil Exploration Company (Getty) owns the conditional water rights, located in Garfield and Mesa Counties in Western Colorado, at issue in this case. After a trial, the water court ruled that Getty had demonstrated reasonable diligence to complete the appropriation given the economic circumstances of the oil shale industry. We now hold that the evidence supports

---

1. Colorado Appellate Rule 1(a) provides that an appeal may be taken from:
   (2) A judgment and decree, or any portion thereof, in a proceeding concerning water rights; and an order refusing, granting, modifying, cancelling, affirming or continuing in whole or in part a conditional water right, or a determination that reasonable diligence or progress has or has not been shown in an enterprise granted a conditional water right.

the water court's findings and conclusions. Accordingly, we affirm the judgment of the water court.

## I. FACTS AND PROCEEDINGS BELOW

Getty owns or controls approximately 50,-000 acres of land in Garfield and Mesa Counties that contain oil shale reserves estimated at thirteen billion barrels. Developing these oil shale lands will require significant amounts of water, which Getty plans to obtain from two sets of conditional water rights. The first set of water rights, owned by Getty, consists of the rights at issue in the instant case. The second set of water rights consists of rights leased by Getty from the Bluestone Water Conservancy District and the Colorado River Water Conservation District (the Bluestone rights).

In 1977, Getty Oil Company (now Getty Oil Exploration Company), Cities Service Company (now OXY USA, Inc.), and Chevron Shale Oil Company formed a joint venture named GCC Joint Venture (GCC) for the purpose of allowing all three companies to participate in acquiring land and in planning, constructing, operating, and maintaining water facilities to divert conditional water rights held by each company. Under the GCC Joint Venture Agreement, Getty serves as operator and proposes a work plan for each calendar year that must be approved by the other two members.

Getty filed an Application for Finding of Reasonable Diligence on October 31, 1995, to maintain its conditional water rights, pursuant to section 37–92–301(4)(a)(I), 10 C.R.S. (1999).[2] The Subdistrict opposed Getty's application and a trial was held before the water court.

After the trial, the water court issued its findings of fact, conclusions of law, judgment, and decree. The court concluded that Getty met the "can and will" standard because the evidence established that the project was technically feasible given current technology and that Getty would proceed with the project when the economics of the industry permitted it. The court found that despite the fact that the adverse economic conditions of the oil shale industry made the project currently not economically feasible, Getty had engaged in sufficient project and site-specific activities to demonstrate a steady application of effort to complete the appropriation in a reasonably expedient and efficient manner. Therefore, the court held that Getty demonstrated reasonable diligence during the relevant period to maintain its conditional water rights.

The Subdistrict appealed the water court's ruling to this court pursuant to section 13–4–102(1)(d), 5 C.R.S. (1999).[3]

## II. ANALYSIS

■ A conditional water right provides the holder with the ability to perfect the right in the future. The advantage of a conditional water right is that when the right matures and is completed by actual application of the water to beneficial use, the priority of the water right relates back to the original date of the decree. *See* § 37–92–305(1), 10 C.R.S. (1999). In this way, conditional water rights are designed to aid and encourage the development and use of water resources by providing incentive for the completion of large water projects requiring extended periods of time. *See Metropolitan Suburban Water Users Ass'n v. Colorado River Water Conservation Dist.,* 148 Colo. 173, 194, 365 P.2d 273, 285 (1961).

■ To prevent hoarding of conditional water rights, the legislature requires the holders of these rights to prove "reasonable diligence" by demonstrating "the steady application of effort to complete the appropriation in a reasonably expedient and efficient manner under all the facts and circumstances." § 37–92–301(4)(b), 10 C.R.S. (1999). The holder of a conditional water right must file an application for a finding of reasonable

---

**2.** Conditional water right decrees are valid for six years and the owner of the right must reapply for a finding of reasonable diligence at the end of this period or the right shall be considered abandoned. *See* § 37–92–301(4)(a)(I).

**3.** This section provides that the supreme court has initial jurisdiction over appeals from water cases involving priorities or adjudications.

diligence every six years or the right shall be considered abandoned. *See* § 37–92–301(4)(a)(I). Outside of requiring proof of reasonable diligence every six years, the legislature has not enacted a maximum time frame during which the conditional water right must mature.

In this appeal, the Subdistrict alleges three points of error in the water court's ruling. First, the Subdistrict argues that Getty's application for reasonable diligence was void when it was filed and that Getty could not cure this defect after the expiration of the statute of limitations. Second, the Subdistrict contends that the water court's finding of reasonable diligence is not supported by the record. Third, the Subdistrict asserts that the water court's interpretation of section 37–92–301(4)(c) is inconsistent with the policy of maximizing the beneficial use of the state's water resources.

In addition, Getty cross-appeals the water court's ruling that work performed on the Bluestone rights could not be considered as part of the same "project or integrated system" for purposes of determining diligence on the rights at issue. We address each contention below in turn.

## A. STANDARD OF REVIEW

■■■ Initially, we address the applicable standard of review of the water court's decision, which presents issues of both law and fact. The water court's interpretation and application of Colorado statutes and case law concerning conditional rights is subject to de novo review. *See Municipal Subdistrict, Northern Colo. Water Conservancy Dist. v. OXY USA, Inc.,* 990 P.2d 701, 706 (Colo.1999) [hereinafter *OXY*]. The water court's finding of diligence, on the other hand, is a factually driven inquiry requiring the court to make a case-by-case consideration of several factors. *See Dallas Creek Water Co. v. Huey,* 933 P.2d 27, 36 (Colo.1997). These factors include, but are not limited to, the following:

(1) economic feasibility; (2) the status of requisite permit applications and other required governmental approvals; (3) expen-

ditures made to develop the appropriation; (4) the ongoing conduct of engineering and environmental studies; (5) the design and construction of facilities; and (6) the nature and extent of land holdings and contracts demonstrating the water demand and beneficial uses which the conditional right is to serve when perfected.

*Id.* A water court's factual findings of reasonable diligence are entitled to deference and we will not disturb them on appeal if there is competent evidence in the record to support them. *See Public Serv. Co. v. Blue River Irrigation Co.,* 829 P.2d 1276, 1277 (Colo. 1992) [hereinafter *Blue River III* ]. Having addressed the proper standard of review, we turn now to a discussion of the Subdistrict's arguments on appeal.

## B. DEFECT IN GETTY'S CORPORATE STATUS

The Subdistrict first argues that Getty's application for a finding of reasonable diligence was void when filed because, at that time, Getty had not complied with the requirements of section 7–115–102(1), 2 C.R.S. (1999), and, consequently, Getty's application was barred by the six-year statute of limitations found in section 37–92–301(4)(a)(I). Getty contends that this defect in its corporate status at the time it filed the application was cured retroactively when Getty obtained a certificate of authority prior to trial.[4] The water court ruled that section 37–92–301(4)(a)(I) did not divest it of jurisdiction to proceed with Getty's application because Getty complied with the requirements of section 7–115–102(1) before the commencement of the trial on the merits.

Section 7–115–101(1) prohibits a foreign corporation from transacting business in this state "until its application for authority to transact business is filed by the secretary of state." Additionally, section 7–115–102(1) provides, "No foreign corporation transacting business in this state without authority nor anyone on its behalf shall be permitted to *maintain a proceeding in any court in this state until an application for authority to*

---

4. Getty admitted in a pleading to the water court that it had not obtained a certificate of authority before filing its application for a finding of reasonable diligence. Vol. I, p. 225.

*transact business is filed.*" (Emphasis added.)

We have not previously addressed the precise issue raised by the Subdistrict: namely, whether the failure to file an application to transact business can be cured before trial, but after the six-year diligence requirement has passed. We have, however, construed prior versions of section 7–115–102, in cases not involving a statute of limitations issue, to allow a corporation to come into compliance at any time. In *Roldan Corporation N.V. v. District Court*, we construed the predecessor statute to section 7–115–102, which differed from the present statute in non-material aspects only,[5] and concluded that "the prohibition [against maintaining an action] is provisional, however, and may be removed at any time by complying with the statutory requirements." 716 P.2d 120, 122–23 (Colo. 1986); *see also International Trust Co. v. A. Leschen & Sons Rope Co.*, 41 Colo. 299, 311–12, 92 P. 727, 731 (1907) (holding that under a predecessor statute a corporation that complied with the requirements of the section after the commencement of its suit but before trial was entitled to maintain its action).

We have previously construed section 37–92–301(4)(a), and its predecessors, as "in the nature of a statute of limitations" for purposes of determining if an application for a finding of reasonable diligence was timely filed. *See, e.g., Fort Lyon Canal Co. v. Purgatoire River Water Conservancy Dist.*, 818 P.2d 747, 749–50 (Colo.1991) (affirming water court's cancellation of water rights by recognizing that mistake and inadvertence in failing to timely file application are insufficient to toll the time-period requirement in section 37–92–301(4)); *Broyles v. Fort Lyon Canal Co.*, 695 P.2d 1136, 1142–43 (Colo.1985) (same); *Bar 70 Enters. v. Highland Ditch Ass'n*, 694 P.2d 1253, 1255–56 (Colo.1985) (holding conditional water right is deemed abandoned for failure to timely file due diligence application); *Town of De Beque v. Enewold*, 199 Colo. 110, 118, 606 P.2d 48, 53 (1980) (affirming water court's cancellation of water rights that were inadvertently omitted

from application on basis that they were not timely filed). In each of these cases, we affirmed the cancellation of water rights because of a party's failure to either timely *file* an application, or to *identify* some conditional rights, within the mandatory time requirements of section 37–92–301(4).

Although we have not previously addressed the precise issue before us, we find our decision in *Dallas Creek Water Company* helpful to the resolution of this issue. In *Dallas Creek Water Company* we held that the statute of limitations in section 37–92–301(4)(a)(I) does not prevent the substitution of real parties in interest on a diligence application after the expiration of the diligence period. *See* 933 P.2d at 41–42. In reaching our holding, we stated that "[f]ailure to comply with a statutory procedure or requirement does not necessarily equate to failure of subject matter jurisdiction. When the continued existence of a conditional water right is disputed, *basic fairness favors trial on the merits of contested issues of fact and law.*" *Id.* at 38 (emphasis added) (citation omitted). We noted that in prior cases affirming cancellation of water rights, either the application was not timely filed, or the application failed to identify some of the conditional water rights which the applicant sought to retain. *See id.* at 41. In conclusion, we reasoned that "the statute of limitations cannot be invoked, because an application identifying the conditional water right at issue *was timely filed* by the water user's agent and basic fairness allows and requires participation in the diligence proceedings by the water user." *Id.* at 41–42 (emphasis added). In addition, we observed, "Objectors have been unable to demonstrate any prejudice, other than their disappointment in not obtaining outright cancellation of the water right without trial." *Id.* at 42 (citation omitted).

■ Although our decision in *Dallas Creek Water Company* involved a question of substitution of parties, we believe that the rationale underlying our holding in that case

---

5. Section 7–9–103(1), 3 C.R.S. (1973), the predecessor to section 7–115–102, provided: "No foreign corporation transacting business in this state without a certificate of authority nor any-

one in its behalf shall be permitted to maintain any action, suit, or proceeding in any court of this state until such corporation has obtained a certificate of authority."

applies with equal force to the facts in the instant case. As in *Dallas Creek Water Company,* the applicant in the instant case, Getty Oil, filed its application in a timely fashion and identified all of the conditional water rights they were seeking to retain. As a result, all potential objectors were provided with sufficient notice allowing them to contest Getty's application if they desired; and, in fact, the Subdistrict filed an objection to Getty's application. Moreover, as we noted in *Dallas Creek Water Company,* the Subdistrict has failed to identify any prejudice resulting from Getty's failure to file their application for authority to transact business before the diligence period expired, other than the Subdistrict's "disappointment in not obtaining outright cancellation of the water right without trial." *Id.* We believe that here, as in *Dallas Creek Water Company,* "basic fairness favors trial on the merits of contested issues of fact and law." *Id.* at 38.

■ Therefore, we now hold that a party's failure to comply with section 7–115–102(1), by failing to file an application for authority to transact business, does not constitute a violation of section 37–92–301(4), divesting the water court of jurisdiction and requiring cancellation of conditional water rights, if the party complies with section 7–115–102(1) before trial. We believe this conclusion is consistent with our prior case law interpreting section 37–92–301(4). Accordingly, we reject the Subdistrict's argument and uphold the water court's ruling on this issue.

## C. DILIGENCE FINDING

The Subdistrict next argues that the water court's finding of reasonable diligence is not supported by the record. Specifically, the Subdistrict argues that the record indicates a lack of intent on the part of Getty to move forward with the water project because of unfavorable economic conditions. Additionally, the Subdistrict contends that many of the water court's specific findings of diligence are not supported by competent evidence in the record.

■ To demonstrate reasonable diligence, the applicant must show "the steady application of effort to complete the appropriation in a reasonably expedient and efficient manner under all the facts and circumstances." § 37–92–301(4)(b). In addition, a finding of reasonable diligence requires the applicant to prove "continuous, project-specific effort directed toward the development of the conditional right commensurate with his capabilities." *Dallas Creek Water Co.,* 933 P.2d at 36 (internal quotation marks omitted). As we noted above, a water court's factual findings of reasonable diligence are entitled to deference and we will not disturb them on appeal if there is competent evidence in the record to support them. *See Blue River III,* 829 P.2d at 1277.

■ The diligence period at issue for the water rights in this case extends from October 19, 1989, to October 31, 1995. The water court found that the following activities were conducted during the diligence period with respect to the water rights at issue. In each calendar year of the diligence period, Getty proposed to the other GCC members construction of a rock barrage across the Colorado River for flow control and channel stabilization purposes. Twenty-three acres of land were acquired for the construction and continued maintenance of the rock barrage. However, the rock barrage was never constructed because Getty's proposed work plans were never approved by the other GCC members as required by the Joint Venture Agreement.

Although the rock barrage was never constructed, the water court found that the following work in three site-specific areas was performed at an approximate cost of $325,-000. In regard to the diversion facility, a preliminary design and cost estimate was prepared; geologic field conditions were investigated; planned specifications and cost estimates were prepared; an existing permit was amended to include the proposed rock barrage; Colorado River morphology was reviewed; and monitoring and recording of Colorado River water levels was conducted for use in design work and operation studies. In regard to the Roan Creek dam, geological and geotechnical investigations of the dam foundation, outlet works, and spillways were performed, as well as investigation of em-

bankment borrow areas for the dam. In regard to the pipeline facilities, a preliminary design and cost estimate for a pumping plant were performed; pipeline alternative alignment studies were performed; geotechnical investigations of alternate pipeline routes were performed; and cost estimates of the alternative pipeline alignments were revised based on the geotechnical investigations.

In addition, the water court found that Getty performed other work which complemented and furthered Getty's water rights. For example, Getty engaged in the installation, maintenance, and monitoring of stream gauges both independently, and in conjunction with the United States Geological Service, at a total cost of $147,646. The water court also noted that Getty was involved in litigation to protect its water rights at a cost of $46,500. Furthermore, the water court found that work performed on the Bluestone rights, although not part of a common system with the rights at issue, was "complementary" to those rights.

Upon review of the record, we conclude that the water court's findings of reasonable diligence are supported by competent evidence. We note that we previously stated in *Municipal Subdistrict, Northern Colorado Water Conservancy District v. Chevron Shale Oil Company*, 986 P.2d 918, 924 (Colo. 1999) [hereinafter *Chevron* ], and *OXY*, 990 P.2d at 706–07, that section 37–92–301(4)(c) allows the court to consider current economic conditions beyond the control of the applicant and that the current economic infeasibility of the project should not defeat a diligence finding. As such, the water court properly concluded that its findings of diligence were sufficient to continue the conditional water rights despite the presence of adverse economic factors making the project's ultimate completion date uncertain.

In addition, we reject the Subdistrict's contention that the water court erred when it found that the work performed on the Bluestone rights was "complementary" to the rights at issue despite the fact that the court also found that work on the Bluestone rights was "separate work and is not to be consid-

ered as work which applies to this proceeding." In spite of this apparent conflict in the court's findings, we note that we have previously held that a water court may consider related work on separate facilities in its overall consideration of the application for diligence. *See City & County of Denver v. Northern Colo. Water Conservancy Dist.*, 130 Colo. 375, 391, 276 P.2d 992, 1000 (1954) (holding that although diligence in separate water projects cannot be imputed to the rights at issue, the fact that the applicant was engaged in the construction of separate, yet related, enterprises may properly be considered together with all other evidence in determination of the issue of reasonable diligence). Moreover, we note that the water court expressly found that Getty's other activities "are sufficient in and of themselves for a finding of reasonable diligence" and the activities regarding the Bluestone rights are merely complementary. We agree that the record indicates that Getty's other activities are sufficient to support the water court's finding of reasonable diligence.

### D. APPLICATION OF SECTION 37–92–301(4)(c)

The Subdistrict's final contention is that the water court erred in its interpretation and application of section 37–92–301(4)(c) to the facts of the instant case. The Subdistrict argues that the water court's decision effectively removes both the "economic feasibility" requirement and the "can and will" requirement from the diligence analysis for conditional water rights.

We recognized in *OXY* that both the "economic feasibility" requirement and the "can and will" requirement must be considered together in a diligence analysis.[6] We have repeatedly stated that the economic feasibility of a project is one factor a court should consider in a diligence proceeding. *See Blue River III*, 829 P.2d at 1277; *Public Serv. Co. v. Blue River Irrigation Co.*, 753 P.2d 737, 742 (Colo.1988); *Colorado River Water Conservation Dist. v. Twin Lakes*

---

**6.** Getty argues that the "can and will" requirement does not apply to diligence proceedings.

We rejected this argument in *OXY, see* 990 P.2d at 707–08, and we do so again here.

*Reservoir & Canal Co.*, 171 Colo. 561, 567, 468 P.2d 853, 856 (1970).

The legislature modified the economic feasibility requirement by adding section 37–92–301(4)(c) in 1990. *See* ch. 269, sec. 1, § 37–92–301(4)(c), 1990 Colo. Sess. Laws 1625, 1626. This section provides:

> Subject to the provisions of paragraph (b) of this subsection (4), *neither current economic conditions beyond the control of an applicant* which adversely affect the feasibility of perfecting a conditional water right or the proposed use of water from a conditional water right ... *shall be considered sufficient to deny a diligence application,* so long as other facts and circumstances which show diligence are present.

§ 37–92–301(4)(c) (emphasis added). As we noted in *OXY,* the addition of this section is evidence that "the General Assembly has made a policy decision that the infeasibility of development of oil shale under current economic conditions should not cause applicants like OXY to lose their conditional rights." *OXY,* 990 P.2d at 708.

■■■ The "can and will" requirement is found in section 37–92–305(9)(b), which provides:

> No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters can be and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and the project *can and will* be completed with diligence and within a reasonable time.

§ 37–92–305(9)(b) (emphasis added). The "can and will" test requires an applicant to establish "a substantial probability that this intended appropriation can and will reach fruition .... Proof of such a substantial probability involves the use of current information and necessarily imperfect predictions of future events and conditions." *OXY,* 990 P.2d at 708 (internal quotation marks omitted). As we noted in *OXY,* an analysis of current economic conditions beyond the control of the applicant is part of the "can and will" test. *Id.*

■■■ We conclude that our resolution of this issue is governed by our decision in *OXY.* As in *OXY,* the water court in the instant case found that the oil shale project is technically feasible given current technology, thus demonstrating that Getty "can" complete the project. The water court also found that Getty "will go forward with the project when it becomes economically feasible." Therefore, we hold that the water court properly interpreted and applied section 37–92–301(4)(c) to the facts of the instant case.

### E. BLUESTONE RIGHTS

Getty argues in its cross-appeal that the water court erred in finding that the Bluestone rights were not part of the same "project or integrated system" as the rights at issue and, consequently, work performed on the Bluestone rights could not be considered as evidence of diligence. The Bluestone rights, as noted above, are rights that Getty leases from the Bluestone Water Conservancy District and the Colorado River Water Conservation District. These are conditional water rights that have been decreed to continue to January 2001. Getty intends to use these rights, along with the rights at issue, to supply water for its oil shale development project when it becomes economically feasible.

Section 37–92–301(4)(b) sets out the definition of reasonable diligence, as noted above, and then provides, "When a project or integrated system is comprised of several features, work on one feature of the project or system shall be considered in finding that reasonable diligence has been shown in the development of water rights for all features of the entire project or system." The language "project or integrated system" is not defined in the statute and we have not previously construed this statutory language.

Because we have already upheld the water court's finding that Getty demonstrated reasonable diligence independent of its work on the Bluestone rights (*see supra* section C), we need not reach the legal issue raised by Getty. Therefore, we decline to address, in the context of this case, the scope of the

language "project or integrated system" contained in section 37–92–301(4)(b).

## III.   CONCLUSION

In sum, we conclude that the water court properly ruled that Getty's application was not barred by its failure to comply with section 7–115–102(1) prior to the expiration of the diligence period.   We further conclude that the water court's findings of reasonable diligence are supported by competent evidence in the record.   We find that the water court properly applied the relevant statutory sections to take into account the economics of the oil shale industry in making its diligence finding.   Finally, we decline to reach the issue of the scope of the language "project or integrated system" in section 37–92–301(4)(b).   Accordingly, we affirm the judgment of the water court.

Justice HOBBS does not participate.