MUNICIPAL SUBDISTRICT, NORTH-
ERN COLORADO WATER CONSER-
VANCY DISTRICT, Objector-Appellant,

v.

CHEVRON SHALE OIL COMPANY,
Applicant-Appellee,

Orlyn G. Bell, Division Engineer, Water
Division 5, Appellee pursuant to
C.A.R. 1(e).

No. 98SA377.

Supreme Court of Colorado,
En Banc.

Sept. 13, 1999.

Trout & Raley, P.C., Bennett W. Raley, Bart L. Rickenbaugh, Denver, Colorado, Attorneys for Objector–Appellant.

Dufford & Brown, P.C., Jack F. Ross, Joanne Herlihy, Denver, Colorado, Attorneys for Applicant–Appellee.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Wendy C. Weiss, First Assistant Attorney General, Carol D. Angel, Senior Assistant Attorney General, Natural Resources Section, Denver, Colorado, Attorneys for Appellee.

David C. Hallford, Jill C. Harris, Glenwood Springs, Colorado, Leavenworth & Tester, P.C., Loyal E. Leavenworth, Glenwood Springs, Colorado, Attorneys for Amicus Curiae for Colorado River Water Conservation District.

Leavenworth & Tester, P.C., Loyal E. Leavenworth, Glenwood Springs, Colorado, Attorneys for Amicus Curiae for City of Rifle, Town of New Castle, Mid Valley Metropolitan District.

Brownstein, Hyatt & Farber P.C., James S. Lochhead, Glenwood Springs, Colorado, Attorneys for Amicus Curiae for City of Grand Junction.

Balcomb & Green, P.C., Lori J.M. Satterfield, Scott Balcomb, Glenwood Springs, Colorado, Attorneys for Amicus Curiae for Basalt Water Conservancy District.

Stuver & George, P.C., Melody D. Massih, Russell George, Rifle, Colorado, Attorneys for Amicus Curiae for West Divide Water Conservancy District.

Frank G. Cooley, Meeker, Colorado, Attorneys for Amicus Curiae for Yellow Jacket Water Conservancy District.

Batton & McClow, LLC, John H. McClow, John R. Hill, Jr., Gunnison, Colorado, Attorneys for Amicus Curiae for Upper Gunnison River Water Conservancy District.

Williams, Turner & Holmes, P.C., Anthony W. Williams, Mark A. Hermundstad, Grand Junction, Colorado, Attorneys for Amicus Curiae for Getty Oil Exploration Company.

Carson, Hammond & Paddock, L.L.C., William A. Paddock, Peter C. Fleming, Denver, Colorado, Attorneys for Amicus Curiae for OXY USA INC. and its wholly owned subsidiary, Conn Creek Shale Company.

Porzak Browning & Johnson LLP, Glenn E. Porzak, Steven J. Bushong, Heidi C. Fletemeyer, Boulder, Colorado, Attorneys for Amicus Curiae for Exxon Corporation.

Balcomb & Green, P.C., Scott Balcomb, Lori J.M. Satterfield, Glenwood Springs, Colorado, Attorneys for Amicus Curiae for Mobil Oil Corporation.

Williams, Turner & Holmes, P.C., Anthony W. Williams, Mark A. Hermundstad, Grand Junction, Colorado, Attorneys for Amicus Curiae for Shell Frontier Oil & Gas Inc.

Holland & Hart LLP, Anne Castle, Denver, Colorado, Attorneys for Amicus Curiae for Rocky Mountain Oil & Gas Assoc.

Friedlob Sanderson Raskin Paulson & Tourtillott, LLC, Brian M. Nazarenus, Carolyn F. Burr, Denver, Colorado, Attorneys for

Amicus Curiae for Public Service Co. of Colorado & Climax Molybdenum Co.

Moses, Wittemyer, Harrison and Woodruff, P.C., James R. Montgomery, Kevin J. Kinnear, Boulder, Colorado, Attorneys for Amicus Curiae for Union Oil Company of California.

Frank G. Cooley, Meeker, Colorado, Attorneys for Amicus Curiae for Marathon Oil Company.

Holly I. Holder, P.C., Holly I. Holder, Denver, Colorado, Attorneys for Amicus Curiae for Puckett Land Company.

Chief Justice MULLARKEY delivered the Opinion of the Court.

The Municipal Subdistrict, Northern Colorado Water Conservancy District (the Subdistrict) appeals a hexennial finding of reasonable diligence in the development of conditional water rights decreed by the District Court, Water Division No. 5 (water court). Chevron Shale Oil Company (Chevron) owns the conditional water rights at issue in this case and intends to perfect these rights at some point in the future by using the water for the production. of shale oil and its by-products. The Subdistrict claims that the water court erred in finding that Chevron demonstrated reasonable diligence in the development of its conditional water rights. The subdistrict additionally asserts that Chevron intends to hold these water rights for over 100 years without exercising reasonable diligence and that such inaction constitutes unlawful speculation in conditional water rights. We disagree with the Subdistrict's contentions. We conclude that the water court's finding of reasonable diligence is supported by competent evidence in the record, and therefore affirm its decision.

## I.

On September 29, 1995, pursuant to section 37-92-301(4), 10 C.R.S. (1998), Chevron filed an application for a hexennial finding of reasonable diligence on its conditional water rights. The conditional water rights at issue are to be appropriated in three structures: the Dragert pumping plant and pipeline, the Eaton pumping plant and pipeline, and the Pacific Oil Company pipeline and pumping plant number one. These conditional water rights originated in the early 1950s and are decreed for use in connection with Chevron's shale oil project located in the Roan Creek and Parachute Creek drainages of western Colorado. Chevron owns oil shale lands in those drainages. The water court designated the diligence period to be from September 14, 1989 through September 30, 1995.

Three parties, including the Subdistrict, filed statements of opposition to Chevron's application. However, by the time the case went to trial, the other two objectors had withdrawn pursuant to stipulations entered into with Chevron, leaving the Subdistrict as the sole objector.

After a three-day trial, the water court issued written findings of fact and conclusions of law. It concluded that Chevron had demonstrated due diligence for the applicable period and that, as a result, Chevron's conditional water rights could not be deemed abandoned. The Subdistrict appealed.

## II.

The Subdistrict asserts that the water court made numerous errors when it found that Chevron had demonstrated reasonable diligence.[1] We address each in turn.

1. The Subdistrict presented four issues for review:
   1. Whether Chevron exercised reasonable diligence towards the perfection of conditional water rights which it initiated in the 1950s when it has not yet started to construct any facilities or placed water to beneficial use and, based on its own planning documents, is not likely to do so until approximately 2085.
   2. Whether Chevron's intent to hold these conditional water rights for a period of 100 to 135 years without either beneficial use of the water or actual and continuous progress towards completion of the required facilities constitutes an unlawful speculation in conditional water rights that deprives others of their constitutional right to appropriate and use waters of the natural streams.
   3. Whether taking into consideration the fact that these conditional water rights are 45 years old and commencement of construction of the necessary facilities has not yet started, do activities such as planning, attending meetings, litiga-

## A.

■ In its first allegation of error, the Subdistrict contends that the water court erred in finding that Chevron had exercised reasonable diligence in the perfection of its conditional water rights.

Section 37–92–301(4) governs the administration of conditional water rights. Section 37–92–301(4)(a)(I) imposes on the owner or user of a decreed conditional water right the duty to file, every six years, an application for a finding of reasonable diligence in the applicant's efforts to appropriate the water right. If the applicant fails to file this application every six years, the conditional water right is considered abandoned. *See* § 37–29–301(4)(a)(I).

■ To demonstrate reasonable diligence, the applicant must show "the steady application of effort to complete the appropriation in a reasonably expedient and efficient manner under all the facts and circumstances." § 37–92–301(4)(b). A water court makes a case-by-case consideration of several factors when it considers whether the applicant has made such an effort. *See City of Lafayette v. New Anderson Ditch Co.*, 962 P.2d 955, 961 (Colo.1998) (citing *Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 36 (Colo. 1997)). These factors include but are not limited to:

> (1) economic feasibility; (2) the status of requisite permit applications and other required governmental approvals; (3) expenditures made to develop the appropriation; (4) the ongoing conduct of engineering and environmental studies; (5) the design and construction of facilities; and (6) the nature and extent of land holdings and contracts demonstrating the water demand and beneficial uses which the conditional right is to serve when perfected.

*Dallas Creek Water Co.*, 933 P.2d at 36. If facts and circumstances show diligence, a water court must not deny an application solely because current economic conditions that are beyond the applicant's control "adversely affect the feasibility of perfecting a conditional water right or the proposed use of water from a conditional water right." § 37–92–301(4)(c). A water court's factual findings of reasonable diligence are binding on an appellate court if the findings are supported by competent evidence in the record. *See Public Serv. Co. of Colo. v. Blue River Irrigation Co.*, 829 P.2d 1276, 1277 (Colo.1992).

In this case, the water court found that Chevron had pursued numerous activities, which it grouped into seven categories. We list these categories instead of each activity. The first six are: planning for a diversion facility, planning a dam on Roan Creek, planning for pipeline facilities, preparing environmental baseline studies, preparing a detailed master planning document for Chevron's Parachute Creek Unit, and participating in miscellaneous activities related to the conditional water rights such as litigation, research projects, and studies. As the seventh, the court cited Chevron's continued basic research in the applicable hydrocarbon chemistry and bitumen decomposition process to facilitate the production of oil from oil shale. Both parties agree that evidence supporting this seventh category is not in the record.

■ Apart from the seventh finding, the Subdistrict does not challenge the accuracy of the water court's findings.[2] Rather, the Subdistrict asserts that water courts must impose a more stringent standard of reasonable diligence as a conditional water right ages. The Subdistrict advances this argument based on the language of section 37–92–301(4)(b) which requires the applicant to show "the steady application of effort to complete the appropriation in a reasonably expedient and efficient manner under all the facts and circumstances." § 37–92–301(4)(b).

tion, and lobbying constitute evidence of reasonable diligence.

4. Whether C.R.S. § 37–92–301(4)(c) exempts conditional water rights held for the purpose of the production of oil from shale from the prohibition against speculation in water rights required by section 5, article XVI of the Colorado Constitution and the decisions of this court.

2. The Subdistrict alleges, however, that Chevron failed to confirm that some of the activities initiated during the prior diligence period were completed during this diligence period and not in the prior diligence period. Our review of the record indicates that the water court's findings as to the work completed during this diligence period are supported by competent evidence in the record.

Based on this interpretation, the Subdistrict argues that Chevron's efforts to perfect its conditional water rights do not demonstrate reasonable diligence because Chevron has not offered proof of continuous work that resulted in meaningful progress towards the completion of the appropriation within a reasonable time and because Chevron has not demonstrated that it "can and will" complete the appropriation. As proof, the Subdistrict makes three assertions.

First, the Subdistrict claims that Chevron's efforts to date have not been continuous. To that end, the Subdistrict points to the fact that Chevron deferred its efforts to develop shale oil after oil prices dropped in the 1980s. As a result of this deferral, the number of employees at Chevron dropped to one from fifty or sixty. The Subdistrict claims that, during the diligence period, Chevron decided to defer the shale oil project until 2085.

Second, the Subdistrict claims that Chevron's efforts have not resulted in any actual progress towards the perfection of its conditional water rights. As an example, the Subdistrict points to the fact that Chevron has not started construction of the necessary project facilities even though Chevron's conditional water rights were appropriated nearly forty-five years prior to the appropriation period. In addition, the Subdistrict asserts that Chevron's $1.5 million in expenditures during the six-year diligence period prove lack of meaningful progress because Chevron's parent company, having a $3 billion annual capital expenditure budget, should have provided more money to fund the estimated $200 million cost of the shale oil project. The Subdistrict also notes that, of this $1.5 million, nearly one-third was spent on litigation unrelated to perfecting the conditional water rights. Finally, the Subdistrict asserts that Chevron failed to prove that the $1.5 million in expenditures were directly related to the shale oil project and the water rights at issue in this case.

As its third and final assertion regarding lack of reasonable diligence, the Subdistrict argues that Chevron's participation in a joint venture with two other oil companies retarded Chevron's progress towards the perfection of its own conditional water rights. Chevron and the other two oil companies intended to construct joint water facilities that could be used to supply water for the individual companies' shale oil projects. During the diligence period, the companies failed to construct any facilities.

Chevron responds by arguing that the water court applied the correct standard in the diligence proceeding and that the water court's finding of reasonable diligence is binding on this court because it is supported by competent evidence in the record. Chevron notes that the Subdistrict does not dispute the evidence Chevron submitted as proof of its efforts to perfect the conditional water rights with reasonable diligence.

Instead, Chevron asserts that the Subdistrict advances a misleading interpretation of the evidence that was rejected by the water court. For example, Chevron claims that the record is devoid of any evidence that Chevron intends to defer the project until the year 2085. Chevron asserts that the Subdistrict misinterpreted three hypothetical scenarios set forth in a planning document listing potential shale oil project start-up dates of 2020, 2050, and 2085. Chevron contends that a start up in the year 2085 is the worst case scenario.

Moreover, Chevron notes that this planning document demonstrates Chevron's commitment to the conditional water rights because the document resulted in an affirmative decision by Chevron to keep, rather than divest itself of, its oil shale properties. Chevron also asserts that it has made continuous efforts to develop its conditional water rights despite the decline in oil prices and that its participation in the joint venture is additional evidence of such diligence.

We agree with Chevron that the water court used the appropriate test and that its findings are supported by competent evidence in the record. We have consistently held that a trial court must make an ad hoc factual inquiry into many factors when it determines whether an appropriation has been developed with reasonable diligence. *See, e.g., City of Lafayette,* 962 P.2d at 961; *Blue River Irrigation Co.,* 829 P.2d at 1277;

*Trans–County Water, Inc. v. Central Colo. Water Conservancy Dist.,* 727 P.2d 60, 64 (Colo.1986). The water court analyzed Chevron's efforts towards perfection of its conditional water rights, applying the factors set out in *Dallas Creek Water Co., see* 933 P.2d at 36, and made detailed factual findings pursuant to those factors. The Subdistrict does not dispute the accuracy of these findings. Based on our own independent review of the record, we conclude that the water court's findings are supported by competent evidence in the record. Although the court erroneously relied in part on evidence not in the record regarding Chevron's research into the production of oil from oil shale, the other evidence is sufficient to uphold the water court's finding of reasonable diligence.

■ As such, we reject the Subdistrict's claim that Chevron's scale-down of its development efforts and its lack of actual construction of facilities on its own or with the joint venture means that Chevron has not demonstrated meaningful progress warranting a finding of reasonable diligence. As our precedent states:

> It is in the sound discretion of the water court, looking at all the facts and guided by the principle that water rights are to be developed in the most expedient and efficient manner possible under the circumstances, to determine what activities will be required for a showing of reasonable diligence.

*Colorado River Water Conservation Dist. v. City & County of Denver,* 640 P.2d 1139, 1142 (Colo.1982). The water court recognized that, in light of the fact that the production of oil from shale is not currently economically feasible, Chevron's efforts, although minimal, were sufficient to demonstrate a steady application of effort to complete its appropriation in a reasonably expedient and efficient manner. We defer to those findings. In addition, we reject the Subdistrict's contention that Chevron was required to additionally prove that it "can and will" use the water rights.

### B.

In its second allegation of error, the Subdistrict argues that Chevron's intent to defer the actual development of its conditional water rights until 2085 violates section 5, article XVI of the Colorado Constitution as a prohibited speculation in water rights. *See* Colo. Const. art. XVI, § 5. Chevron responds that this issue was not raised before the water court and, therefore, should not be considered by this court. In the alternative, Chevron asserts that the anti-speculation doctrine does not apply to an application for reasonable diligence. We decline to address the question of whether the anti-speculation doctrine applies in diligence proceedings because we agree with Chevron that this issue was not raised before the water court. *See Colby v. Progressive Cas. Ins. Co.,* 928 P.2d 1298, 1301 (Colo.1996).

### C.

■ The Subdistrict's final issue on appeal concerns the water court's application of the "current economic conditions" limitation set out in section 37–92–301(4)(c). Section 37–92–301(4)(c) states that if facts and circumstances show diligence, a water court must not deny an application solely because current economic conditions that are beyond the applicant's control "adversely affect the feasibility of perfecting a conditional water right or the proposed use of water from a conditional water right." § 37–92–301(4)(c). The Subdistrict argues that the water court should not have relied on the fact that current economic conditions make the shale oil project economically unfeasible when it analyzed whether Chevron's efforts constituted reasonable diligence. The Subdistrict reasons that this approach allows Chevron to delay the project indefinitely.

Chevron counters that it is proper to consider the current economic feasibility of the project during a diligence proceeding. As support, Chevron argues that it would be unreasonable to expect Chevron to proceed with the project merely because its parent company has sufficient funds when current economic conditions adversely affect the project's feasibility.

■ We agree with Chevron that the water court properly considered the current economic feasibility of the shale oil project.

The plain language of section 37–92–301(4)(c) recognizes that current economic conditions beyond the control of the applicant might adversely affect efforts to perfect the water right. *See* § 37–92–301(4)(c). This provision prohibits courts from using such a circumstance to deny a diligence application when there is other evidence of reasonable diligence. As a result, when current economic conditions beyond the control of an applicant slow progress towards the perfection of a conditional water right, it is not improper for a court to consider the effect of the adverse economic conditions. This interpretation of the statute has been implicit in our caselaw that sets forth the requirements for an ad hoc finding of reasonable diligence. For example, in *Dallas Creek Water Co.*, we stated that "economic feasibility" is one of several factors to be considered by water courts in diligence proceedings. *See Dallas Creek Water Co.*, 933 P.2d at 36.

In this case, there is undisputed evidence that Chevron exercised reasonable diligence despite the adverse economic conditions in the shale oil industry. As noted, *supra*, the water court found that Chevron had planned for a diversion facility, planned a dam on Roan Creek, planned for pipeline facilities, prepared environmental baseline studies, prepared a detailed master planning document for Chevron's Parachute Creek Unit, and had participated in miscellaneous activities related to the conditional water rights such as litigation, research projects, and studies. Therefore, we hold that it was not improper for the water court to consider the economic conditions of the shale oil industry when it made its reasonable diligence determination, and we reject the Subdistrict's contention.

### III.

In conclusion, we hold that the water court's findings of reasonable diligence are supported by competent evidence in the record. The Subdistrict did not raise before the water court its claim that Chevron's actions constitute an improper speculation in water

rights, and we, therefore, decline to address this issue. In addition, we hold that it was not improper for the water court to consider the current economic conditions of the shale oil industry. Thus, we affirm the decision of the water court.

Justice HOBBS does not participate.