MUNICIPAL SUBDISTRICT, NORTHERN COLORADO WATER CONSERVANCY DISTRICT, Objector–Appellant/Cross–Appellee,

v.

OXY USA, INC., Applicant–Appellee/Cross–Appellant,

and

Orlyn G. Bell, Division Engineer, Water Division 5, Appellee pursuant to C.A.R. 1(e).

No. 98SA475.

Supreme Court of Colorado, En Banc.

Dec. 13, 1999.

Trout & Raley, P.C., Bennett W. Raley, Bart L. Rickenbaugh, Denver, Colorado Attorneys for Objector–Appellant/Cross–Appellee.

Carlson, Hammond & Paddock, L.L.C., Peter C. Fleming, William A. Paddock, Emy Pollock, Denver, Colorado Attorneys for Applicant–Appellee/Cross–Appellant.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McClachlan, Solicitor General, Patricia S. Bangert, Director of Legal Policy, Wendy C. Weiss, First Assistant Attorney General, Carol D. Angel, Senior Assistant Attorney General, Natural Resources Section, Denver, Colorado Attorneys for Appellee Orlyn G. Bell.

Fairfield and Woods, P.C., Stephen H. Leonhardt, David M. Gillilan, Denver, Colorado, Attorneys for Amicus Curiae Southeastern Colorado Water Conservancy District.

David C. Hallford, Jill C. Harris, Glenwood Springs, Colorado, Leavenworth & Tester, P.C., Loyal E. Leavenworth, Glenwood Springs, Colorado, Attorneys for Amicus Curiae Colorado River Water Conservation District.

Moses, Wittemyer, Harrison and Woodruff, P.C., James R. Montgomery, Kevin J. Kinnear, Boulder, Colorado, Attorneys for Amicus Curiae Union Oil Company of California.

Williams, Turner & Holmes, P.C., Anthony W. Williams, Mark A. Hermundstad, Grand Junction, Colorado, Attorneys for Amicus Curiae Shell Frontier Oil & Gas Inc. and Getty Oil Exploration Inc.

Fiedlob, Sanderson, Raskin, Paulson & Tourtillott, LLC, Brian M. Nazarenus, Denver, Colorado, Attorneys for Amicus Curiae Public Service Co. of Colorado and Climax Molybdenum Company.

Balcomb & Green, P.C., Scott Balcomb, David Sandoval, Jefferson J. Cheney, Glenwood Springs, Colorado, Attorneys for Amicus Curiae Mobil Oil Corporation.

Porzak Browning & Johnson, LLP, Glenn E. Porzak, Steven J. Bushong, Heidi C. Fletemeyer Boulder, Colorado, Attorneys for Amicus Curiae Exxon Corporation.

Dufford & Brown, P.C., Jack F. Ross Denver, Colorado, Attorneys for Amicus Curiae Chevron Shale Oil Company.

Justice KOURLIS delivered the Opinion of the Court.

This case involves the hexennial application of OXY U.S.A., Inc. (OXY) to maintain conditional water rights that it holds in Garfield County, Colorado. The water court

concluded that OXY had demonstrated reasonable diligence in its efforts to complete the appropriation, and granted the conditional decree. We now hold that the evidence supported the water court's findings and conclusions and affirm accordingly. The water court was entitled to take the economics of the shale oil industry into account, and was also correct in requiring OXY to demonstrate that it "can and will" complete the project under more favorable economic conditions.

## I.

OXY owns more than 10,000 acres of land in Garfield County that contain significant oil shale reserves. The process of extracting the shale requires significant water resources, and OXY holds a conditional water decree for its future shale operations. OXY obtained the conditional water rights from its predecessor, Cities Service Company, who initiated the rights in 1951 and 1966, and obtained a decree in 1970.

OXY filed a hexennial application in 1995 to maintain its conditional water rights, pursuant to section 37–92–301(4)(a), 10 C.R.S. (1999). The Municipal Subdistrict, Northern Colorado Water Conservancy District (the Subdistrict) opposed the application, claiming that OXY failed to develop its conditional rights diligently, and therefore, effectively abandoned them.

The evidence presented to the water court reflects that OXY currently has one employee responsible for its oil shale development project, and the project's expenses are budgeted as part of the overhead for another operating group within OXY. During the six-year diligence period, OXY spent a total of $5,052,235 on the project. These expenses included drilling four natural gas wells that provided data regarding the oil shale reserves as well as income to offset the cost of maintaining the oil shale assets.[1]

OXY's other activities during the diligence period included: 1) completing technological and economic feasibility studies for the property; 2) attempting to solicit financial partners for the project; 3) participating in the Colorado River Project on Threatened and Endangered Species, the Colorado River Simulation Model Project (CORSIM), the Rocky Mountain Oil and Gas Association, Oil Shale Committee, and the Colorado Water Congress' Colorado River Project on Water Quality Standards; and 4) gathering data regarding water supply. OXY incurred additional expenses for salaries, engineering fees, legal fees, and litigation costs to protect its water rights.

OXY admitted before the water court that it currently cannot extract the oil shale because low oil prices make the project economically infeasible. Until oil prices rise or the government subsidizes the project, OXY is unlikely to extract any shale.

The water court held that under section 37–92–301(4)(c), 10 C.R.S. (1999), OXY met the "can and will" standard because OXY possessed the technology to make the project feasible and because the project would proceed as soon as oil prices rise. The water court found that despite the adverse economic conditions, OXY's activities as a whole demonstrated diligent effort to complete the project in a reasonably expedient and efficient manner.

The Subdistrict appealed the water court's ruling to this court pursuant to Colorado Constitution, article VI, section 2(2), and section 13–4–102(1)(d), 5 C.R.S. (1999). The Subdistrict challenged the water court's findings of reasonable diligence as well as a ruling on discovery sanctions against OXY.

## II.

A conditional water right gives the holder the ability to perfect a water right in the

---

1. As further evidence of diligence, OXY introduced evidence of its expenses for participation in the GCC Joint Venture (GCC), a consortium of companies that own shale reserves and seek eventually to develop a joint water facility. GCC prepared a preliminary design and cost estimate for the diversion facility, acquired land, amended its permit under the Federal Water Pollution Control Act § 404, 33 U.S.C. § 1344 (1999), and researched current river morphology and water levels in anticipation of developing a proposed diversion facility. The GCC engaged in similar activities for the proposed Roan Creek dam and a pipeline facility. We do not take this evidence into account because, as we discuss *infra* Part IV, the water court inappropriately took judicial notice of these facts rather than requiring direct evidence.

future as long as the holder diligently develops the right to eventual maturity. *See* § 37–92–103(6), 10 C.R.S. (1999). To maintain a conditional water right, the holder must file an application for a finding of reasonable diligence every six years. *See* § 37–92–301(4)(a)(1). Once the conditional right matures and is completed by actual application of the water to beneficial use, the priority of the right relates back to the date of the decree. *See* § 37–92–305(1), 10 C.R.S. (1999). The legislature has not provided a time frame during which the conditional right must mature.

The Subdistrict claims that OXY's activities over the last six years do not rise to the level of diligence necessary to maintain the conditional water rights, and thus, OXY effectively abandoned its rights. The water judge disagreed, holding that OXY sufficiently demonstrated that it was pursuing completion of its conditional water rights and that the test for demonstrating reasonable diligence was met.

■ The water court's conclusion presents issues of both law and fact. The water court's interpretation of Colorado statutes and case law concerning conditional rights is, of course, subject to our de novo review. *See City of Thornton v. Bijou Irrigation Co.,* 926 P.2d 1, 40 (Colo.1996). As to the factual issues, a water court "must make an ad hoc factual inquiry into many factors when it determines whether an appropriation has been developed with reasonable diligence." *Municipal Subdist., N. Colo. Water Conservancy Dist. v. Chevron Shale Oil Co.,* 986 P.2d 918, 922 (Colo.1999) (hereinafter *Chevron*). The findings arising out of this inquiry are entitled to deference and we will not disturb them unless the evidence in the record is wholly insufficient to support the water court's determinations. *See Bijou Irrigation,* 926 P.2d at 40.

## A. SHOWING OF DILIGENCE

■ The standard for demonstrating diligence in development of a conditional water right is "the steady application of effort to complete the appropriation in a reasonably expedient and efficient manner under all the facts and circumstances." § 37–92–301(4)(b), 10 C.R.S. (1999). As the statute indicates, the determination of whether reasonable diligence has been exercised by an applicant is a fact-based decision requiring the water court to consider all relevant evidence. *See Public Serv. Co. v. Blue River Irrigation Co.,* 829 P.2d 1276, 1277 (Colo.1992). These factors include "the size and complexity of the project, the extent of the construction season, the availability of material, labor, and equipment, the economic ability of the claimant, and the intervention of outside delaying factors." *Trans–County Water, Inc. v. Central Colo. Water Conservancy Dist.,* 727 P.2d 60, 64 (Colo.1986).

■ Activities of the applicant must be project-specific. *See Colorado River Water Conservation Dist. v. City & County of Denver,* 640 P.2d 1139, 1142 (Colo.1982) (finding that general activities, such as litigation to protect water rights, standing alone, do not amount to reasonable diligence). Evidence of project-specific work may include planning, design, financing, or construction efforts to develop the project. *See id.* However, "work on one feature of the project or system shall be considered in finding that reasonable diligence has been shown in the development of water rights for all features of the entire project or system." § 37–92–301(4)(b).

This court's recent decision in *Chevron* addresses many of the issues raised by the Subdistrict. In that case, the Subdistrict raised a similar challenge to Chevron's hexennial application for a conditional water right. We upheld the water court's finding that Chevron demonstrated due diligence because the record showed that the company invested resources in activities such as planning for diversion and pipeline facilities, planning for a dam, preparing environmental baseline studies, preparing a detailed master planning document, and participating in miscellaneous activities such as litigation, research projects, and studies. *See Chevron,* 986 P.2d at 921.

In *Chevron,* we clarified that the plain

language of section 37–92–301(4)(c) [2] allows courts to consider "current economic conditions beyond the control of the applicant" that might adversely affect efforts to perfect its water right. *See id.* at 924. As a result, we held that the water court could take into account "the economic conditions of *the shale oil industry*." *Id.* (emphasis added).

■ This interpretation of the statute does not mean that an individual applicant's financial efforts should not be considered as part of the diligence finding. The applicant's financial situation may be relevant to the analysis, but it should not be a controlling factor. *Cf. Trans–County Water,* 727 P.2d at 65 (considering the applicant's inability to fund the project as one factor in reaching the conclusion that the applicant failed to exercise reasonable diligence).

■ In this case, the water court took into account depressed oil prices in assessing OXY's diligence in developing the project. The water court properly found that the economic conditions in the oil shale industry were beyond OXY's control; hence, the current economic infeasibility of the project should not defeat a diligence finding. The court made sufficient findings of diligence even in the face of adverse economic factors so as to satisfy the requirements of the statute.

## B. "CAN AND WILL"

■ The water court held that in order to demonstrate reasonable diligence, OXY was required to demonstrate that it "can and will" complete the project in addition to proving that it pursued the project with reasonable diligence. The water court determined that the "can and will" requirement of section 37–92–305(9)(b), 10 C.R.S. (1999) is incorporated into the reasonable diligence requirements of section 37–92–301(4)(c). The court stated that "when the two statutes above are read together, the 'economic conditions' provision represents a corollary to the

'can and will' test and the two statutes must be read together." We agree.

Section 37–92–305(9)(b) sets out the requirements for the initial issuance of a conditional water decree:

No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters *can be and will be* diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project can and will be completed with diligence and within a reasonable time.

*Id.* (emphasis added).

OXY argues that the "can and will" requirement only applies to initial decrees and does not invite anew a determination of whether the applicant continues to be able to satisfy that standard at the conclusion of each diligence period. In short, OXY suggests that the diligence inquiry should be retrospective only, examining what the applicant has done in the diligence period to move toward beneficial use of the water. Contrary to OXY's claims, however, this court has plainly held that the "can and will" requirement of section 37–92–305(9)(b) should be read into a hexennial diligence application proceeding.

The above-emphasized reference to diligence in the statutory provisions governing conditional water rights [§ 37–92–305(9)(b)] plainly indicates legislative intent to require, *in subsequent diligence proceedings,* a demonstration that the decreed conditional appropriation is being pursued in a manner which affirms that capture, possession, control, and beneficial use of water *can and will* occur in the state, thereby justifying continued reservation of the antedated priority pending perfection of a water right.

*Dallas Creek Water Co. v. Huey,* 933 P.2d 27, 37 (Colo.1997) (emphasis added) (footnote omitted); *see also Four Counties Water Users Ass'n v. Colorado River Water Conser-*

---

**2.** Section 37–92–301(4)(c), states that

neither current economic conditions beyond the control of the applicant which adversely affect the feasibility of perfecting a conditional water right or the proposed use of water from

a conditional water right ... shall be considered sufficient to deny a diligence application, so long as other facts and circumstances which show diligence are present.

*vation Dist.*, 159 Colo. 499, 516, 414 P.2d 469, 478 (1966) (deciding under an earlier version of the statute that an applicant must prove it can and will complete an application in subsequent diligence proceedings).

■ The very nature of a conditional right suggests that the "can and will" test applies until the right matures into an absolute decree. A conditional water right "encourage[s] development of water resources by allowing the applicant to complete financing, engineering, and construction with the certainty that if its development plan succeeds, it will be able to obtain an absolute water right." *Public Serv. Co. v. Blue River Irrigation Co.*, 753 P.2d 737, 739 (Colo.1988). At each successive stage of the project, parties must appear before the court to demonstrate sufficient work to prove that the applicant is moving toward completion of the project. *See Four Counties Water Users*, 159 Colo. at 516, 414 P.2d at 478. Unless the applicant makes this showing, the conditional right is speculative and violates the anti-speculation doctrine. *Cf. City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 42 (Colo.1996).[3] In this respect, the anti-speculation doctrine and the "can and will" requirement are closely related, although the "can and will" test is slightly more stringent. *See id.*

Recently in *Chevron*, we stated that the holder of a conditional water right was not required to meet the "can and will" test in addition to proving reasonable diligence. *See* 986 P.2d at 923. However, in that case, the court already had determined that Chevron sufficiently demonstrated "a steady application of effort to complete its appropriation in a reasonably expedient and efficient manner." *Id.* Under the facts of that case, that conclusion by the water court was sufficient to satisfy both the "can and will" standard and the reasonable diligence standard.

■ In general, the "can and will" test requires an applicant to establish "a substantial probability that this intended appropriation can and will reach fruition.... 'Proof of such a substantial probability involves use of current information and neces-

sarily imperfect predictions of future events and conditions.'" *Bijou Irrigation*, 926 P.2d at 42 (quoting *In re Board of County Comm'rs of Araphoe County*, 891 P.2d 952, 961 (Colo.1995)). An analysis of current economic conditions beyond the control of the applicant is a part of the "can and will" test. *See Public Serv. Co. of Colo. v. Board of Water Works*, 831 P.2d 470, 478 (Colo.1992).

■ We perceive no error in the water court's ruling either as to the statement of the law or the application of that law to the facts. The water court concluded that the oil shale project is technically feasible given current technology—or, in other words, that OXY "can" complete the project. The court found that OXY "will" complete the project when the current economic conditions facing the oil shale industry no longer exist. As we noted in *Chevron*, the General Assembly has made a policy decision that the infeasibility of development of oil shale under current economic conditions should not cause applicants like OXY to lose their conditional rights. We are bound by that policy determination.

## C. ANTI–SPECULATION DOCTRINE

■ The Subdistrict correctly claims that hexennial diligence applications are subject to the anti-speculation doctrine and that section 37–92–301(4)(c) does not exempt conditional water rights from application of that doctrine. We declined to address this issue in *Chevron* because the parties did not properly raise the question before the water court. *See* 986 P.2d at 923.

■ The anti-speculation doctrine, which prohibits the acquisition of a conditional right without a vested interest or a specific plan to possess and control water for a specific beneficial use, clearly applies to the initial entry of a conditional decree. *See* § 37–92–103(3)(a), 10 C.R.S. (1999); *see also Colorado River Water Conservation Dist. v. Vidler Tunnel Water Co.*, 197 Colo. 413, 417, 594 P.2d 566, 568 (1979).

---

**3.** However, the "can and will" requirement should not be applied rigidly to defeat beneficial uses when the applicant can demonstrate a non-

speculative intent to complete the appropriation for a beneficial use. *See Bijou Irrigation*, 926 P.2d at 43.

The anti-speculation doctrine initially was intended to prohibit the entry of conditional decrees when the holder had nothing more than an intent to sell the right at an unknown time in the future for profit. However, because a conditional right, or some portion of that right, may become speculative over time, we now hold that just as the "can and will" test continues to apply in later diligence proceedings, so does the anti-speculation doctrine.[4] Again, the nature of a conditional water right dictates this conclusion. If a water right initially clears the anti-speculation hurdle, yet later becomes speculative, then the project is not moving toward completion and beneficial use. "Speculation on the market, or sale expectancy, is wholly foreign to the principle of keeping life in a proprietary right and is no excuse for failure to perform that which the law requires." *Dallas Creek Water Co.*, 933 P.2d at 36 (quoting *Knapp v. Colorado River Water Conservation Dist.*, 131 Colo. 42, 56, 279 P.2d 420, 427 (1955)).

In the instant case, the water court's finding that OXY demonstrated steady effort to complete the appropriation was sufficient on this point. OXY's investments, in this diligence proceeding and earlier proceedings, demonstrate that it intends to pursue the project to completion in the future. No questions were raised about the need for the full water rights once OXY actually begins to produce oil shale. The only issues that the Subdistrict asserts are those related to economic feasibility and timing of the project. Accordingly, the water court findings are sufficient to satisfy both the "can and will" standard and the anti-speculation requirements of Colorado law.

### III.

During pretrial discovery, the Subdistrict sought to depose OXY representatives and served a deposition notice on OXY pursuant to C.R.C.P. 30(b)(6). The notice stated that the Subdistrict sought information including a general description of OXY's future plans for the oil shale project, information regarding the company's oil price forecasting, and its long range capital investment planning. OXY designated as the deponent Vance Woolley, the employee responsible for keeping the oil shale project moving forward until it becomes economically viable for full development. Woolley testified about OXY's activities over the previous six years, but was unable to answer questions regarding OXY's development plans or its economic projections.

The Subdistrict also requested production of documents relating to OXY's development plans. OXY did not produce any documents until one week before trial, when it produced a document titled "Western Region Strategic Plan 1995–2003" that included OXY's capital investment strategies.

When OXY failed to designate any other officers or employees, the Subdistrict moved for sanctions under C.R.C.P. 37 for OXY's failure to make an appropriate officer available for deposition. The water court initially denied sanctions but ultimately limited OXY's testimony on market analyses and oil price forecasting to those matters within Woolley's limited knowledge. The Subdistrict renewed its motion prior to trial and the judge granted some sanctions. The water court concluded that OXY "knowingly failed to comply with discovery by failing to identify the appropriate agent" to be deposed because Woolley had no specific knowledge regarding OXY's future oil shale development plans. The water court found that "[t]his designation frustrated legitimate attempts by objector to reach information held by the parent company and resulted in costly discovery attempts by objector which were unnecessary." As a result, at the end of the proceedings, the water court ordered OXY to pay expenses and attorneys fees related to discovery.

The Subdistrict claims that OXY's failure to meet its disclosure obligations under

---

4. This court previously stated in dicta that the anti-speculation doctrine did not apply to a subsequent diligence application. *See Municipal Subdist., N. Colo. Water Conservancy Dist. v. Rifle Ski Corp.*, 726 P.2d 635, 637 n. 1 (Colo.1986). In that case, the scope of the anti-speculation doctrine was not dispositive to the central issue in the case and so the court did not fully explore the issue as we do today.

C.R.C.P. 30(b)(6) required the water court either to mandate compliance or to dismiss the case pursuant to C.R.C.P. 37. It further claims that the award of discovery costs alone was an abuse of discretion because the sanction did not cure the prejudice the Subdistrict suffered from the errors.

■ We find no error. We hold that a water court judge may issue sanctions for failure to appear under C.R.C.P. 37(d) when a corporation designates a deponent who appears but is unable to answer all the questions specified in the C.R.C.P. 30(b)(6) notice.[5] *See, e.g., Resolution Trust Corp. v. Southern Union Co.,* 985 F.2d 196, 197–98 (5th Cir.1993) (*RTC*) (finding that when a corporation fails to designate the proper person, "the appearance is, for all practical purposes, no appearance at all"). Corporate entities have complete power to designate the person who will testify on their behalf, and thus, the potential to misuse and delay the discovery process by appointing an officer or employee without knowledge is greater than when a private individual is deposed. *See* 7 James Wm. Moore, *Moore's Federal Practice* § 37.91[1] (3d ed.1999).

■ C.R.C.P. 37(d) expressly states that a water court "shall" award costs and attorneys fees when a party fails to make a deponent available under C.R.C.P. 30(b)(6). A court is not obligated to provide additional sanctions in the form of compliance or dismissal but the judge "may" order such additional sanctions "as are just." *See* C.R.C.P. 37(d); *see also RTC,* 985 F.2d at 198 (finding expense-shifting sanctions appropriate when a corporation failed to designate a deponent with personal knowledge). A trial judge has considerable discretion to determine whether

sanctions should be imposed for discovery violations and what those sanctions should be. *See People v. Milton,* 732 P.2d 1199, 1207 (Colo.1987). "To say that a court has discretion ... means that it has the power to choose between two or more courses of action and is therefore not bound in all cases to select one over the other." *Id.* Because the water court's decision regarding sanctions is permissive, its decision should be overturned only upon a showing of abuse of discretion. *See id.* Abuse of discretion occurs only if the decision is "manifestly arbitrary, unreasonable, or unfair" under the circumstances. *Id.*

■ In addition, we have directed courts to impose sanctions that are "commensurate with the seriousness of the disobedient party's conduct." *Kwik Way Stores, Inc. v. Caldwell,* 745 P.2d 672, 677 (Colo.1987). Dismissal is the "severest form of sanction and should be entered only in extreme cases." *Lewis v. J.C. Penney Co.,* 841 P.2d 385, 387 (Colo.App.1992). Dismissal is appropriate only when a party flagrantly disregards discovery obligations. *See id.*

■ Because courts have discretion in awarding sanctions under C.R.C.P. 37, a water court should set out the bases for an imposition of sanctions. *See Kwik Way Stores, Inc.,* 745 P.2d at 678. The water court's findings in this case were sufficient for that purpose, and in light of the evidence in the record demonstrating Woolley's inability to answer questions as well as OXY's late production of documents, the water court's conclusion that OXY violated discovery orders was reasonable. We find that the water court imposed an appropriate remedy in assessing OXY costs and fees for its violation of C.R.C.P. 30(b)(6).[6]

---

**5.** C.R.C.P. 37(d) states:
> If a party or an officer, director, or managing agent of a party or a person designated pursuant to C.R.C.P. Rule[ ] 30(b)(6) ... to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized by subparagraphs (A), (B), and (C) of subsection (b)(2) of this Rule.... In lieu of any order or in addition thereto, the court shall require the party failing to act or

> the attorney advising that party or both to pay the reasonable expenses, including attorneys fees, caused by the failure....

**6.** OXY argues that the case should not be remanded but that if it is remanded, it was error for the water court to prevent OXY's expert witness from testifying on certain matters after the expert refused service of process. Because we affirm the water court's ruling and decline to remand the case, we need not reach the question of whether these sanctions were proper under the circumstances.

## IV.

The Subdistrict claims the water court committed reversible error when it admitted the testimony of Woolley, an OXY officer, as to activities of the GCC during the diligence period. Woolley had not been responsible for the shale development project for the entire diligence period, and the Subdistrict, therefore, objected to his testimony as being without personal knowledge. The water court overruled the objection and stated:

as one who has sat through the trial in the Chevron case and who could probably re-cite all these things myself, it becomes a little bit difficult to seriously consider that objection. I'm going to overrule it. . . . We all know generally what was going on in the GCC during that period of time.

The water court then stated that it would allow Woolley's testimony because he was the chief operating officer of the division responsible for the oil shale project and he was familiar with the GCC's activities on a general basis. The court also limited Woolley's testimony to general answers, not a detailed description of the GCC's activities.

Trial courts may take judicial notice of facts "not subject to reasonable dispute" that are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." CRE 201(b). This rule "has traditionally been used cautiously in keeping with its purpose to bypass the usual fact finding process only when the facts are of such common knowledge that they cannot reasonably be disputed." *Prestige Homes, Inc. v. Legouffe*, 658 P.2d 850, 853 (Colo.1983).

▬▬▬▬ A court may take judicial notice of its own records and adopt factual findings from a previous case as long as the previous case involved the same parties and the same issue. *See Hughes v. Jones*, 89 Colo. 455, 461, 3 P.2d 1074, 1076 (1931); *see also Linker v. Linker*, 28 Colo.App. 136, 146, 470 P.2d 882, 887 (1970). However, a court may not take judicial notice of facts on the very issue the parties are litigating. *See One Hour Cleaners v. Industrial Claim Appeals Office*, 914 P.2d 501, 505 (Colo.App.1995).

▬▬▬▬ In this case, the parties disputed the activities of GCC, or they at least disputed the characterization of those activities. This dispute bore directly on the central issue at trial—whether OXY exercised sufficient diligence in maintaining its water rights. Therefore, the facts regarding GCC's activities were not the type of facts that could properly be subject to the judicial notice rule. The facts are also not of the type that could be recognized as part of a court's own records. Although the same fact-finder presided over the earlier proceeding, the parties in interest were not the same, and it was therefore, improper for the water court to take judicial notice of GCC's activities from the *Chevron* trial. Although the water court erred in its pronouncement, the court's error was not central to its conclusion that OXY exercised adequate diligence. OXY presented ample other evidence that it diligently was pursuing its conditional rights. Therefore, we decline to find reversible error on this point.

▬▬▬▬ The Subdistrict also objects to the water court's findings because they closely paralleled OXY's proposed findings. Although appellate courts will scrutinize a trial court's findings when they have been adopted from those proposed by a litigant, the trial court's use of such findings does not amount to error. *See Ficor, Inc. v. McHugh*, 639 P.2d 385, 390 (Colo.1982); *see also Uptime Corp. v. Colorado Research Corp.*, 161 Colo. 87, 93–94, 420 P.2d 232, 235 (1966). Irrespective of the drafter of the findings, if they are supported by competent evidence in the record, we will not disturb them. *See Ficor*, 639 P.2d at 390. "[T]he findings, if otherwise sufficient, are not weakened or discredited because given in the form submitted by counsel." *Uptime Corp.*, 161 Colo. at 93, 420 P.2d at 235.

## V.

We affirm the water court's ruling that OXY sufficiently satisfied its obligations of reasonable diligence during the hexennial pe-

riod. We clarify that both the "can and will" standard and the anti-speculation doctrine are applicable to subsequent diligence proceedings. We restate our holding in *Chevron* that the water court make take the economic conditions of the oil shale industry into account when assessing whether the applicant has proven that it diligently developed its rights as well as whether it "can and will" complete the project. We also uphold the trial court's award of sanctions for discovery violations.

Justice HOBBS does not participate.