23CA1510 Matter of Judith A McGraw 08-07-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1510
El Paso County District Court No. 18PR30184
Honorable Vincent N. Rahaman, Magistrate

---

In the Matter of Judith A. McGraw, deceased.

Evelyn Jane Lawrence,

Appellant and Cross-Appellee,

v.

Stanton McGraw and Stacey McGraw Evans,

Appellees and Cross-Appellants,

and

Estate of Michael Fred Lawrence,

Appellee,

and

Lawrence Family Ranch Corporation,

Defendant.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE MOULTRIE
Welling and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

Daniel B. Slater, Canon City, Colorado, for Appellant and Cross-Appellee

John Henry Schlie P.C., John Henry Schlie, Greenwood Village, Colorado, for Appellees and Cross-Appellants

Gardner Legal Services, LLC, Matthew R. Gardner, Linton Wright, Boulder, Colorado, for Appellee Estate of Michael Lawrence

No Appearance for Defendant Lawrence Family Ranch Corporation

¶ 1    The parties to this probate appeal are family members involved in a longstanding dispute concerning their asserted interests in a family trust and certain parcels of land associated with the trust. Evelyn Jane Lawrence (Jane)[1] appeals the district court's order and challenges, among other things, the court's jurisdiction and its ownership determination of the disputed parcels. Stanton McGraw and Stacey McGraw Evans (jointly, the McGraws) cross-appeal the court's parcel ownership determinations. We reverse the court's order determining ownership of the disputed parcels and remand with directions. We otherwise affirm the court's order.

## I.    Background

¶ 2    This action has a complex factual and procedural history, the relevant portions of which we recite here.

¶ 3    Judith McGraw died intestate in El Paso County in 2005. Judith was survived by her husband, Dale McGraw, and their two children, Stanton and Stacey. Dale later remarried and died intestate, survived by his second wife.

---

[1] To avoid confusion between those who share a last name, we refer to parties and others referenced in this opinion by their first names or nicknames used in the district court proceedings. We intend no disrespect in doing so.

¶ 4     Judith's father, Robert Lawrence, died in 1981. Robert owned hundreds of acres in Custer County, consisting of six parcels of land (Parcels 1-6).

¶ 5     In 1989, Judith and her two siblings, Michael Lawrence and Jane, formed the Lawrence Family Ranch Corporation (the LFRC) "to honor Robert's desire to create an entity that would hold his property for his children and future descendants and to protect the parcels from the reach of creditors." Each sibling received 100 shares of the corporation. Between 1989 and 1994, the siblings engaged in a series of transactions that transferred Parcel 1 to the LFRC and Parcels 4 and 6 to Jane.[2]

¶ 6     In 2016, the McGraws filed suit against Jane and Michael in Fremont County. The McGraws alleged that they each were entitled to fifty shares of LFRC stock, which was inherited from Judith upon her death. The Fremont County district court dismissed that case for lack of subject matter jurisdiction, ruling that the dispute was within the jurisdiction of the El Paso County district court because

---

[2] Parcels 2, 3, and 5 aren't at issue in this appeal.

2

the claims arose from Judith's estate and Judith wasn't a resident of Fremont County when she died.

¶ 7    In February 2018, the McGraws filed a petition in the El Paso County district court to determine heirship of Judith's stock shares. In November 2019, they amended their petition, additionally seeking, as relevant here, a declaration of their ownership interests in the LFRC, judicial dissolution of the LFRC, appointment of a receiver for the LFRC, and partition of the LFRC's property.

¶ 8    In response, Jane filed a series of pro se motions seeking dismissal of the McGraws' petition.  As relevant here, Jane argued that the district court lacked subject matter jurisdiction to consider civil and corporate claims, the McGraws failed to join necessary and indispensable parties to the litigation, and the McGraws' petition "raise[d] series concerns about the statute of limitations."

¶ 9    The court ruled that it had subject matter jurisdiction to hear the McGraws' claims and appointed a receiver for the LFRC over Jane's objection.  The issue of whether the McGraws were the rightful heirs of Judith's LFRC stock shares through inheritance was resolved when Dale's second wife disclaimed any interest in those shares.

¶ 10 The court conducted a trial on the McGraws' remaining claims over six nonconsecutive days between April 2021 and December 2022. In June 2021, Jane — now represented by counsel — filed a midtrial motion to dismiss in which her counsel raised numerous issues, including that the court lacked jurisdiction to hear the McGraws' claims and that the McGraws' claims were barred by various statutes of limitation. The court didn't specifically rule on the midtrial motion but rather indicated its intent to issue a final order at the end of the trial.

¶ 11 The court issued its final order in July 2023. The court determined that, together, the McGraws possessed a one-third interest in the LFRC; that Parcel 1 belonged to the LFRC because Jane had held it in trust for the LFRC; and that Parcels 4 and 6 belonged to Jane. The court ordered the dissolution of the LFRC and declined to reimburse any party for work that had been done on the parcels or otherwise related to the LFRC.

¶ 12 On appeal, Jane argues that the court (1) didn't have "jurisdiction" to consider matters related to the LFRC's real property, order dissolution of the LFRC, or appoint a receiver; (2) erred by failing to rule on the statute of limitations issues she

raised in her midtrial motion; (3) improperly considered as judicial admissions prior arguments she made in a separate case; (4) erroneously determined that she wasn't entitled to any offsets for expenses related to the LFRC; and (5) improperly determined title to real property without the involvement of all interested parties.  In their cross-appeal, the McGraws argue that the court erred by awarding Parcels 4 and 6 to Jane as her separate property rather than concluding those parcels were property of the LFRC.

¶ 13    As discussed below, we conclude that the court erred when it purported to determine ownership of Parcels 1, 4 and 6.  We otherwise reject Jane's contentions.  Accordingly, we reverse the portions of the court's order determining parcel ownership, affirm the remaining portions of the order, and remand to the district court for further proceedings consistent with this opinion.

## II.    The El Paso District Court, Sitting in Probate, Had Broad Jurisdiction

¶ 14    Jane asserts that the El Paso district court didn't have "jurisdiction . . . or any other authority" to consider issues related to the LFRC's real property that was located in Custer County, to dissolve the LFRC, or to appoint a receiver.  We disagree.

A.      Standard of Review and Applicable Law

¶ 15      A court's subject matter jurisdiction concerns its authority to deal with the class of cases in which it renders judgment, not its authority to enter a particular judgment within that class. *Meggitt v. Stross*, 2021 COA 50, ¶ 39. "In determining whether a particular court has jurisdiction, we consider the nature of the party's claim and the relief sought." *Black v. Black*, 2018 COA 7, ¶ 75. We review the legal issue of jurisdiction de novo. *In re Estate of Murphy*, 195 P.3d 1147, 1150 (Colo. App. 2008).

¶ 16      In Colorado, district courts sitting in probate have jurisdiction to determine

> every legal and equitable question arising in connection with decedents', wards', and absentees' estates, so far as the question concerns any person who is before the court by reason of any asserted right in any of the property of the estate or by reason of any asserted obligation to the estate.

§ 13-9-103(3), C.R.S. 2024; *see Est. of Lembach v. Lembach*, 622 P.2d 606, 607 (Colo. App. 1980) ("[T]he specific enumeration of the Denver Probate Court's subject matter jurisdiction [in title 13, article 9] is applicable to all district courts sitting in probate matters.").

6

¶ 17    District courts sitting in probate thus have "broad jurisdiction 'to determine every legal and equitable question arising *in connection with* decedents' . . . estates,'" as long as the question concerns a person who asserts a right in the property of the estate. *In re Estate of Owens*, 2017 COA 53, ¶ 12 (quoting *Murphy*, 195 P.3d at 1151).  This broad jurisdiction encompasses the authority to resolve any dispute "logically relating to the estate."  *Murphy*, 195 P.3d at 1151.

> B.    The Court Had Jurisdiction to Consider Matters Related to the Ownership of Real Property Located in Custer County

¶ 18    The McGraws asked the court to determine the ownership of Judith's LFRC stock shares and the extent of the McGraws' interests in the LFRC, dissolve the LFRC, and partition the LFRC's property (which they argued included real property located in Custer County).  "Shares of stock in a company duly incorporated under the laws of this state are personal property."  *McClaskey v. Lake View Mining & Tunneling Co.*, 31 P. 333, 334 (Colo. 1892).  And Jane concedes that it was "entirely appropriate" for the district court, sitting in probate, to determine ownership of Judith's shares.  But, she argues, the court exceeded its jurisdiction when it also

addressed issues related to the ownership of real property in Custer County that wasn't "owned or alleged to be owned by the decedent." We aren't persuaded.

¶ 19 The nature of the McGraws' claims and the relief sought by those claims were logically related to the court's legal determination of who had inherited Judith's LFRC stock shares after her death. *See Murphy*, 195 P.3d at 1151. The McGraws claimed that they were rightful shareholders of the LFRC and that the disputed parcels were assets of the LFRC. The relief they sought, if the court agreed with them, was judicial dissolution of the LFRC and partition of the disputed parcels.

¶ 20 Thus, the court was tasked with determining the ownership of Judith's LFRC stock shares and how those shares were related, if at all, to the ownership of the disputed parcels. After determining that the McGraws inherited Judith's LFRC stock shares, the court considered whether the McGraws had a legal or equitable interest in the LFRC's assets to resolve whether the McGraws were entitled to the partition of those assets. This determination, in turn, required the court to consider the ownership interests in the disputed

parcels — and was therefore logically related to a question arising in connection with Judith's estate.

¶ 21     To the extent that Jane asserts that the court, which was located in El Paso County, didn't have authority to enter orders concerning the parcels because the McGraws should have filed suit in Custer County, where the parcels are located, we also reject that argument.  *See Sanctuary House, Inc. v. Krause*, 177 P.3d 1256, 1258 (Colo. 2008) (once subject matter jurisdiction is established, venue determines which particular Colorado court should hear the case).  Judith died in El Paso County.  When a person dies intestate and leaves behind personal property, any person potentially affected by the ownership of the property can file a petition to determine heirship in the county where the decedent "was domiciled or resided" at the time of their death.  § 15-12-1302(1), C.R.S. 2024.

¶ 22     We recognize section 15-12-1302(1) also says that when a person who dies intestate leaves behind real property, a person seeking an heirship determination may petition the court in the county where at least a part of the real property is located.  But, as we've just concluded, the court's determination of the ownership of the real property — the disputed parcels — was related to its

9

determination of the ownership of Judith's personal property — the LFRC stock shares. And because the McGraws properly filed their petition for heirship in El Paso County, the El Paso County district court was the court with exclusive jurisdiction to adjudicate all claims related to Judith's estate, despite the disputed parcels being located in a different county. *See* § 15-10-303(1), C.R.S. 2024 ("Where a proceeding under [the probate code] could be maintained in more than one place in [Colorado], the court in which the proceeding is first commenced has the exclusive right to proceed."); *see also* § 15-10-201(41), C.R.S. 2024 (a "proceeding" includes an action at law and a suit in equity).

### III. Dissolution of the LFRC and the Court's Appointment of a Receiver

#### A. The Court Didn't Err by Considering the Parties' Voluntary Dissolution of the LFRC

¶ 23　Jane asserts that the district court didn't have jurisdiction to dissolve the LFRC because "[the McGraws] brought their claim for corporate dissolution under [section 7-114-302, C.R.S. 2024]." So, she argues, the court exceeded its authority when it failed to comply with the provisions of that section.

¶ 24    In relevant part, section 7-114-302(1) requires that a proceeding for judicial dissolution of a corporation be brought in the district court for the county where the corporation's principal office is located. The LFRC's principal office is located in Fremont County. However, a *voluntary* corporate dissolution isn't subject to these same requirements. *See* § 7-114-102, C.R.S. 2024 (detailing the requirements for voluntary dissolution of a corporation). When, as here, shares in a corporation have been issued, the corporation can be voluntarily dissolved by a majority vote of the shareholders who are entitled to vote. § 7-114-102(1), (2)(c), (5).

¶ 25    During the trial, the court received evidence indicating that the McGraws and Michael wanted the LFRC to be dissolved but Jane didn't. And in December 2022, a majority of the LFRC's shareholders — consisting of the McGraws and Michael — voted to voluntarily dissolve the corporation. Michael's counsel notified the court of the voluntary dissolution of the LFRC in January 2023.

¶ 26    In its order, the court found that a majority of the LFRC's shareholders had already voted to voluntarily dissolve the corporation. Specifically, the court noted that

> the parties admit[ted] that in the last LFRC [shareholder] meeting, Michael, Stanton and Stacey voted for the voluntary dissolution of the corporation and Jane voted against the dissolution of the corporation. . . . Based on this Court's determination of ownership of shares, such a vote provide[d] a majority of shareholders agreeing that LFRC should be dissolved and the land sold. Based on the evidence presented, there has already been a vote . . . approving a voluntary dissolution of the LFRC.

¶ 27 Voluntary dissolution of a corporation doesn't require court approval. *See* § 7-114-102. Thus, the dissolution of the LFRC was effective upon the majority shareholder vote. And, in any event, the court didn't act upon the notice of dissolution. Instead, the court merely acknowledged receipt of the information and referenced it in its order.

¶ 28 We acknowledge that the court stated it was *also* ordering a *judicial* dissolution of the LFRC because it found that "Jane ha[d] misapplied and wasted corporate assets." But since the court found with record support that the LFRC had already been voluntarily dissolved, we conclude that any error in the court purporting to judicially dissolve the LFRC was harmless. *See* C.R.C.P. 61; *see also* C.A.R. 35(c); *In re Estate of Gonzalez*, 2024

12

COA 63, ¶ 40 ("Under the harmless error standard, we will not disturb a judgment unless a court's error affected the substantial rights of the parties."); *Bernache v. Brown*, 2020 COA 106, ¶ 26 (noting that an error affects the substantial rights of the parties if it substantially influenced the outcome of the case or impaired the basic fairness of the trial).

### B. The Court Had Jurisdiction to Appoint a Receiver

¶ 29    Turning to the court's appointment of a receiver, Jane asserts that the court appointed a receiver pursuant to "Part 3" of title 7, article 114 of the Colorado Revised Statutes, which governs judicial dissolution of corporations. In support of this contention, Jane points to the court's statements from an August 2020 hearing that it had reviewed "[sections] 7-114-301, 7-114-303, 7-113-102, 201, 7-114-302, 303, [and] 305," C.R.S. 2024, and "look[ed] at 7-114-303(2), which is the . . . applicable statute regarding a receiver." Jane asserts that the court committed reversible error because it didn't have "jurisdiction" to appoint a receiver under this authority. We disagree that the court committed reversible error for three reasons.

¶ 30    First, we reject the notion that the court didn't have subject matter jurisdiction to appoint the receiver. Again, subject matter jurisdiction concerns the class of cases that a court may adjudicate, *Meggitt*, ¶ 39, and we've already concluded that the court had subject matter jurisdiction to consider all claims logically related to Judith's estate. When a court already has subject matter jurisdiction, its later failure to follow a statutory requirement doesn't divest it of that jurisdiction. *Id.*; *see also Riant Amusement Co. v. Bailey*, 249 P. 7, 7 (Colo. 1926) (holding that if the court's appointment of a receiver violates a statute, "that would be error, not want of jurisdiction," where court had jurisdiction over the subject matter and parties).

¶ 31    Second, while we acknowledge that there is no specific statutory authority authorizing appointment of a receiver in a voluntary corporate dissolution, *cf.* § 7-114-303(1) (authorizing a court to appoint a receiver to "to wind up and liquidate . . . the business and affairs of the corporation" in a judicial corporate dissolution), a court may appoint a receiver before judgment in *any* case in accordance with established principles of equity, *see* C.R.C.P. 66(a)(3).

14

¶ 32     Third, since a court's appointment of a receiver is governed by general equitable principles, it's required to consider the totality of the circumstances in deciding whether to appoint a receiver. *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 519-20 (Colo. App. 2006).  Whether to appoint a receiver generally "rests within the sound discretion" of the court, and we won't disturb the court's determination without a clear abuse of discretion.  *Id.* at 512; *see also Black v. Black*, 2020 COA 64M, ¶ 118 ("A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law.").

¶ 33     We can't conclude, under the circumstances presented here — including the LFRC's lengthy history involving numerous financial and property transactions, ongoing familial conflict, and contested legal and equitable interests in Judith's unresolved estate — that the court's appointment of the receiver was manifestly arbitrary, unreasonable, or unfair.  Quite to the contrary, doing so was manifestly reasonable under the circumstances found by the district court.  Thus, even if the court erred by relying on section 7-114-303(2) as its authority for appointing a receiver, this error was harmless because it didn't affect Jane's substantial rights, and

15

the court otherwise acted within its considerable discretion under C.R.C.P. 66. *See, e.g.*, *Wunder v. Dep't of Revenue*, 867 P.2d 178, 181 (Colo. App. 1993) (noting that error was harmless where party wasn't prejudiced by non-jurisdictional statutory violation).

## IV. Statute of Limitations

### A. Additional Facts

¶ 34    Jane's midtrial motion to dismiss asserted that the McGraws' claims for breach of fiduciary duty, conversion, civil theft, civil conspiracy, and unjust enrichment were barred by the applicable statutes of limitation. The court didn't specifically rule on these arguments during the trial or in its final order. Jane also argued that the McGraws' claims of interest in the parcels were barred by the eighteen-year statute of limitations in section 38-41-101, C.R.S. 2024.

### B. Preservation, Standard of Review, and Applicable Law

¶ 35    Jane contends that the court erred by not ruling in her favor on various statutes of limitation defenses that she raised. The McGraws and Michael assert that these arguments weren't properly preserved.

¶ 36    The applicability of a statute of limitations is a question of law that we review de novo. *Gunderson v. Weidner Holdings, LLC*, 2019 COA 186, ¶ 9.

¶ 37    Section 38-41-101(1) states that "[n]o person shall commence or maintain an action for the recovery of the title or possession or to enforce or establish any right or interest of or to real property . . . unless commenced within eighteen years after the right to bring such action . . . has first accrued."

## C.    Analysis

¶ 38    Jane concedes that the court didn't rule on her statute of limitations arguments as they pertained to the McGraws' claims for breach of fiduciary duty, conversion, civil theft, civil conspiracy, and unjust enrichment. Accordingly, we decline to address these arguments because they are inadequately preserved. *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21 (issues not raised in *or decided by* the trial court generally will not be addressed for the first time on appeal).

¶ 39    The court also didn't address Jane's argument that section 38-41-101(1) barred the McGraws' ability to assert a claim of interest in Parcel 1; thus, this argument also wasn't preserved.

Nonetheless, because we review de novo whether a statute of limitations applies in a particular case, we exercise our discretion to address this argument and conclude that the court didn't err because section 38-41-101(1) "addresses only the time within which to act to prevent another from obtaining title to property by adverse possession." *Martinez v. Archuleta-Padia*, 143 P.3d 1112, 1114 (Colo. App. 2006). Because there was no question of adverse possession at issue in this case, section 38-41-101(1) doesn't apply.

## V.    The Court Erred in Determining the Parcels' Ownership

¶ 40    Jane and the McGraws each challenge the district court's ownership determinations. Jane contends the court erred by determining that the LFRC owns Parcel 1, and the McGraws contend the court erred by determining that Jane owns Parcels 4 and 6. We agree the court erred in its determination of each parcel's ownership.

### A.    Additional Facts

¶ 41    The court made the following findings with respect to the parcels:

- Parcel 1 was transferred from the LFRC to Jane in 1994 and she remained the record owner of that parcel.

- Parcels 4 and 6 are titled in Jane's name and were never titled in the name of the LFRC.

- Parcel 1's ownership was an issue in a prior dissolution of marriage proceeding (divorce case) involving Jane.

- In 2005, after a multi-day hearing, the court in the divorce case ruled that Parcel 1 was titled in Jane's name but held in trust for the LFRC as an asset protection strategy.

- The court in the divorce case also ruled that Parcels 4 and 6 were Jane's separate property and were not held in constructive trust for the LFRC.

- After a remand from a division of this court, the divorce court entered an order confirming that Parcels 1, 4, and 6 were Jane's separate property.

- A 2014 order from a division of this court affirmed the divorce court's findings that Parcels 1, 4, and 6 were Jane's separate property and that Jane held Parcel 1 in constructive trust for the LFRC.

¶ 42 Relying on the findings and orders from Jane's divorce case, the district court determined that Jane held Parcel 1 in constructive

19

trust for the benefit of the LFRC and that she owned Parcels 4 and 6 as her "sole and separate property."

## B. Standard of Review

¶ 43 We review a trial court's factual findings for clear error. *Owens*, ¶ 39. A factual finding is clearly erroneous if there is no support for it in the record. *In re Marriage of Pawelec*, 2024 COA 107, ¶ 55. But an error is only reversible if it affects the substantial rights of the parties. *Id.* at ¶ 56.

¶ 44 While we defer to the court's factual findings when supported by the record, we review de novo its legal determinations. *McMullin v. Hauer*, 2018 CO 57, ¶ 13. The determination of legal ownership of property is a legal conclusion. *See In re Marriage of Capparelli*, 2024 COA 103M, ¶ 8.

## C. Analysis

### 1. The Court's Ownership Determinations as to Parcel 1 Were Erroneous

¶ 45 As an initial matter, Jane contends that the court improperly determined title to Parcel 1 without all interested parties being named. We decline to address this unpreserved and underdeveloped issue.

¶ 46    Jane's opening brief doesn't identify the interested parties she asserts should have been named in the case or what interests she asserts those parties have in the property. Despite this, she makes the conclusory assertion that it was "inappropriate" for the district court to "determine ownership of Parcel 1 without the involvement and inclusion of those parties." Instead of directing us to portions of the record demonstrating that she sufficiently raised this issue in the district court such that it had an adequate opportunity to consider it, she merely directs us to a portion of a proposed order she submitted to the court. And she fails to identify in the record where the court addressed this contention. Accordingly, we conclude this issue is neither adequately preserved nor adequately briefed, and we decline to address it. *See Brown*, ¶ 21; *see also Taylor v. Taylor*, 2016 COA 100, ¶ 13 (declining to address an underdeveloped argument); *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996) ("[I]t is not the duty of the reviewing court to search the record for evidence to support bald assertions."), *aff'd*, 940 P.2d 348 (Colo. 1997).

### a. Neither Issue Preclusion Nor Judicial Estoppel Prohibited Jane's Ownership Claim as to Parcel 1

¶ 47    Michael asserts that the doctrine of issue preclusion prevents Jane from arguing in this case that Parcel 1 is her property when she previously argued in the divorce case that she held Parcel 1 in constructive trust for the LFRC.  The McGraws assert that we should apply the doctrine of judicial estoppel to reject Jane's claim that she didn't hold Parcel 1 in constructive trust for the same reason.  We address and reject both arguments.

### i.    Issue Preclusion

¶ 48    The doctrine of issue preclusion "bars relitigation of issues necessary to the outcome of a prior action," and it may be invoked offensively or defensively.  *Vanderpool v. Loftness*, 2012 COA 115, ¶¶ 10-11.  A plaintiff invokes issue preclusion offensively when they seek to prevent a defendant from relitigating an issue that the plaintiff must prove and that the defendant previously litigated unsuccessfully.  *Id.* at ¶ 11.

¶ 49    A party invoking issue preclusion must show that (1) the issue sought to be precluded is identical to an issue that was actually and necessarily determined in the prior proceeding; (2) the party

against whom estoppel is asserted was a party to, or is in privity with a party to, the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.* at ¶ 17. If the prior proceeding's purposes and procedures are significantly different than those in the current proceeding, the fourth element isn't satisfied. *Byrd v. People*, 58 P.3d 50, 55 (Colo. 2002).

¶ 50 Finally, a party entitled to assert issue preclusion may waive it. *Vanderpool*, ¶ 15. Whether issue preclusion has been waived is a discretionary determination for the court after consideration of the circumstances of the current and prior cases, the timing of the assertion that issue preclusion applies, and the fairness to the party sought to be estopped. *Id.* at ¶ 19.

¶ 51 Michael concedes that he didn't argue in the district court that Jane was estopped by issue preclusion from asserting that she owned Parcel 1 outright. Thus, he has arguably waived the right to assert issue preclusion against Jane on appeal. But even if Michael didn't waive this argument, we conclude that issue preclusion doesn't apply for two reasons.

23

¶ 52 First, Michael is asserting issue preclusion offensively to prevent Jane from relitigating the issue of Parcel 1's ownership, which he asserts was conclusively determined in the divorce case. But he acknowledges that offensive issue preclusion doesn't "precisely" apply in this case because in her divorce case, Jane *successfully* argued that she holds Parcel 1 in trust for the LFRC. *See id.* at ¶ 11 (offensive issue preclusion requires the defendant to have previously litigated the position *unsuccessfully*).

¶ 53 Second, the fourth element of issue preclusion requires Jane to have had a full and fair opportunity in the divorce case to litigate the same issue in controversy here: whether she, or the LFRC, owned Parcel 1. But the issue in the divorce case was whether Parcel 1 was marital or separate property. Parcel 1 could have been Jane's separate property in the divorce case whether she owned it outright or held it in constructive trust for the LFRC. Jane wouldn't have been motivated to distinguish between those two ownership statuses in the divorce because the purpose of that proceeding was significantly different than the purpose of this one.

¶ 54 Thus, we conclude Jane didn't have a full and fair opportunity in the divorce case to litigate the dispute concerning Parcel 1 that is

at issue in this case. Accordingly, Michael's argument that issue preclusion applies fails.

## ii. Judicial Estoppel

¶ 55 We next turn to the McGraws' assertion that Jane should be judicially estopped from claiming she owns Parcel 1 instead of simply holding it in constructive trust for the LFRC.

¶ 56 Judicial estoppel applies when "a party take[s] a position in a proceeding that is totally inconsistent with a position [she] successfully took in an earlier, related proceeding in an intentional effort to mislead the court." *Arko v. People*, 183 P.3d 555, 560 (Colo. 2008). The doctrine is intended to "prevent the use of 'intentional self-contradiction . . . as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Est. of Burford v. Burford*, 935 P.2d 943, 948 (Colo. 1997) (citation omitted). At a minimum, judicial estoppel requires demonstration that (1) the same party has taken two positions; (2) the party took the differing positions in the same or related proceedings involving the same parties or parties in privity with each other; (3) the party was successful in maintaining the first position and received some benefit in the first proceeding; (4) the party's two positions are

totally inconsistent with each other; and, (5) the party's inconsistency was part of an intentional effort to mislead the court. *Id.*

¶ 57    Because the McGraws weren't parties to Jane's divorce or in privity with her ex-husband, judicial estoppel is inapplicable. *See Arko,* 183 P.3d at 560.  Accordingly, Jane isn't barred from asserting an ownership claim to Parcel 1.

b.    The Court Erred by Adopting the Divorce Court's Property Ownership Determinations as to Parcel 1

¶ 58    We next consider whether the court's determination that Jane held Parcel 1 in constructive trust for the LFRC is supported by the record.  We conclude the court erroneously determined that Jane held Parcel 1 in trust for the LFRC because its determination was based solely on its finding that Jane made certain judicial admissions in the divorce case.

¶ 59    The court indicated that the basis for its ownership determination was its review of the "extensive filings" in the divorce case, including statements made by Jane's former attorneys, which the court considered to be judicial admissions.  In the divorce case, Jane's attorney stated that "Jane has testified that she believes she

26

holds these three parcels in constructive trust on behalf of the [LFRC]."

¶ 60    Despite referencing Jane's purported "judicial admissions," the court didn't treat them as binding. *See Sandstead-Corona v. Sandstead*, 2018 CO 26, ¶ 69 ("A judicial admission is a formal, deliberate declaration which a party or [her] attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." (quoting *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986))). Indeed, had the court treated Jane's and her counsel's statements made in the divorce case as judicial admissions, the court should have concluded that Jane held all three disputed parcels in constructive trust for the LFRC, not just Parcel 1.

¶ 61    Rather, as best we can tell, the court appears to have reviewed the records from the divorce case and treated the divorce court's parcel ownership determinations as judicially noticeable facts upon which it could base its parcel ownership determinations in this case. Specifically, the court noted that

> the record shows prior acknowledgements and admissions that the . . . disputed parcels are being held in trust for the benefit of the

27

> corporation. Ultimately, however, my review of Judge Bromley's February 3, 2005 Order states that only Parcel 1 is held constructively as part of LFRC. . . . [T]he ultimate Order from the divorce case appears to be that only Parcel 1 was held constructively for LFRC. . . . My order on the disputed parcels['] ownership is as follows – Parcel 1 is held in constructive trust by Jane for the benefit of LFRC.

But a court can't take judicial notice of disputed facts. *See* CRE 201(b); *Mun. Subdistrict, N. Colo. Water Conservancy Dist. v. OXY USA, Inc.*, 990 P.2d 701, 711 (Colo. 1999) ("[A] court may not take judicial notice of facts on the very issue the parties are litigating.").

¶ 62    Moreover, Jane presented evidence that could support the conclusion that Parcel 1 was her property. For example, Jane said she paid the LFRC $110,000 for Parcel 1, executed a conservation easement agreement for Parcel 1 that required her to demonstrate ownership of that parcel, and listed Parcel 1 for sale multiple times over the years. But instead of considering the merits of Jane's argument based on this and other evidence, which, if believed, could have supported Jane's claim that she owned Parcel 1 outright, the court merely adopted the divorce court's findings. This was error. And the error wasn't harmless because it affected Jane's substantial rights by denying her the opportunity to have the

28

court thoroughly consider the evidence supporting her claim that Parcel 1 was her sole legal property. *See In re Estate of Fritzler*, 2017 COA 4, ¶ 7.

### 2. The Court Erred by Adopting the Divorce Court's Property Ownership Determinations as to Parcels 4 and 6

¶ 63 As with Parcel 1, the court appears to have determined the ownership of Parcels 4 and 6 by judicially noticing the findings in Jane's divorce case. Reciting from the same order it used to determine Parcel 1's ownership, the court found that

> [P]arcels 4 and 6 were not part of [the] LFRC and Judge Bromley ultimately rejected the constructive trust arguments related to [P]arcels 4 and 6 . . . . While [Jane's] judicial admissions may be binding, . . . the ultimate Order from the divorce case appears to be that only Parcel 1 was held constructively for [the] LFRC.

¶ 64 The court then concluded — based on the ownership determinations the divorce court made — that Parcels 4 and 6 belonged to Jane as her "sole and separate property."

¶ 65 In addition to the prohibition on a court's ability to judicially notice disputed facts, *see OXY USA, Inc.*, 990 P.2d at 711, because the McGraws weren't parties to Jane's divorce proceedings, they aren't bound by the divorce court's determination of the ownership

of Parcels 4 and 6. *Kowalchik v. Brohl*, 2012 COA 49, ¶ 6 ("Generally, due process limits the binding effect of judgments to persons who are parties to the action."). And by taking judicial notice of the divorce court's findings and adopting those findings as its own, the court denied the McGraws their opportunity to have a court determine whether Parcels 4 and 6 belonged to Jane or the LFRC on the merits of the competent evidence presented in this case.

¶ 66    Accordingly, we reverse the court's order determining ownership to Parcels 1, 4, and 6 and remand to the district court for a determination of ownership with respect to those parcels.

## VI.    The Court Didn't Err by Declining to Award to Jane Reimbursement for Expenses

¶ 67    Jane also contends that the court erred by finding that she wasn't entitled to reimbursements or offsets for expenditures she made related to the LFRC. We aren't persuaded.

### A.    Additional Facts

¶ 68    At an October 2020 pretrial conference, Jane told the court that she would be seeking reimbursement for expenses she had incurred over the years from protecting and maintaining the LFRC

and its assets. The court ordered Jane to provide the receiver with her receipts and documentation for those expenses.

¶ 69     Following trial, the court determined that none of the parties had provided sufficient verification of what work was completed, by whom, and for what purpose, nor had they provided sufficient information about whether the work benefited the LFRC and, if so, at what value. The court therefore denied all parties' requests for reimbursement of costs pursuant to its "inherent equitable authority."

### B.     Standard of Review and Applicable Law

¶ 70     "The purpose of a court sitting in equity is to promote and achieve justice with some degree of flexibility, according to the particular circumstances of each case." *Beren v. Beren*, 2015 CO 29, ¶ 18. A court's exercise of its inherent equitable powers allows it to "account for the unique circumstances of a particular proceeding and to ensure that parties are treated fairly." *Id.*

¶ 71     A court's factual findings — which we review for clear error — are only erroneous if they have no support in the record. *Pawelec*, ¶ 55. "We 'may not reweigh evidence or substitute [our] judgment for that of the trial court.'" *Owens*, ¶ 22 (quoting *Target Corp. v.*

31

*Prestige Maint. USA, Ltd.*, 2013 COA 12, ¶ 24). This is especially so where the evidence is conflicting. *See Est. of Breeden v. Gelfond*, 87 P.3d 167, 172 (Colo. App. 2003).

### C.    Analysis

¶ 72    The record supports the court's findings. Although Jane testified that she incurred expenses, she also testified that she could only estimate the expenses she had paid on behalf of the LFRC. Michael testified that he had paid substantial expenses and contradicted Jane's testimony regarding certain payments and agreements related to expenses. Michael further stated that he wasn't aware of many of the LFRC-related expenses for which Jane was requesting reimbursement until litigation began. And despite Jane being ordered to provide documentation to the receiver, the receiver highlighted multiple examples of Jane's uncooperativeness in providing the documentation for her expenses.

¶ 73    Where, as here, there was conflicting evidence, it was up to the court to resolve those conflicts. *In re Estate of Ramstetter*, 2016 COA 81, ¶ 52. And because the court's findings are supported by the record, we won't disturb them. *Id.*

## VII. Disposition

¶ 74    The portion of the district court's order determining the ownership of Parcels 1, 4, and 6 is reversed, and the case is remanded for the court to redetermine ownership of those parcels after making its own findings of fact. The order is otherwise affirmed.

JUDGE WELLING and JUDGE BROWN concur.